Joseph A. Guerra
8938 W. Katie Avenue
Las Vegas, NV 89147
Tel:(702)243-3427
Plaintiff In Pro Per

2010 DEC 16  P 12: 02

## DISTRICT COURT OF THE UNITED STATES

## DISTRICT OF NEVADA

| | |
|---|---|
| Joseph A. Guerra | Case No.:2:10-CV-00029-KJD-RJJ |
| Plaintiff, | |
| vs. | RESPONSE TO ADDITIONAL ANSWERS |
| | OF CHASE HOME FINANCE LLC AND |
| Just Mortgage Inc; Chase Home | MORTGAGE ELECTRONIC |
| Finance; MERS | REGISTRATION SYSTEMS,INC. TO |
| Defendant's. | COMPLAINT |

First, Plaintiff would like to clear up an Order dated 18th of August 2010 by Magistrate Judge Robert J. Johnston. When Plaintiff filed his Complaint during January 2010, he was **not** in default on his Loan nor triggered any non-judicial foreclosure proceedings by Defendants' Chase – MERS – Just Mortgage, Inc.

**FIRST CAUSE OF ACTION:** Chase and MERS have **no standing**

When Just Mortgage, Inc. prepared the Promissory Note, the allonge to the Note was **not** properly endorsed to JP Morgan Chase because there **wasn't** a "special endorsement" that existed

1

therefore, JP Morgan Chase has **no standing** at all on my Loan. It is considered a **blank endorsement** giving rights of a holder strictly by possession. (810.ILCS 5/3-205) states in Section(b) " If an endorsement is made by the holder of an instrument and it is not a special endorsement, it is a **"blank endorsement"**. When it is considered a blank endorsement, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially and officially endorsed. The Note was sold with "allonges" that **are not** proper formats for Endorsing the Instrument. **Result:** the Title to the Note is **not "perfected"** and the buyer has **no** legal "authority to enforce" the Note. Also, when these Notes are securitized into Indentures, which in turn defaulted, the investors were paid by credit-default swaps; the Notes themselves are Paid, just not by the Obligors. So now the Notes (**never stamped "paid" or "recorded"**) get sold off to shark outfits that then insert a "substitute trustee" who in turn sells the property to "pay the Note". Except the Note was **already paid - by the credit-default sway insurance (AIG)**. It is a neat way to get rich, but **it is fraudulent**.

Right now, JP Morgan Chase has it. The **problem is,** JP Morgan Chase in my Complaint is merely a Servicing Agent for another entity who also is the Trustee for the actual party making claim as holder (I'm unable to locate the Certificates Series Numbers

yet). Furthermore, documents submitted into record from the Securites and Exchange Commission show such entities are specifically created investment vehicles that issues securities "backed" by mortgages which they **must own** to sell the securities. JP Morgan Chase **is not** the legal party in interest in my Complaint. It doesn't matter what they hold in their own behalf. They must be holding it for the true party in interest that they have acknowledged in their Answer for either to have standing to be here the way my Complaint is now brought. The debt instruments [(there were two (2) Promissory Notes issued by Just Mortgage, Inc. the First with an interest rate at 5.75% dated March 11, 2010; Second with an interest rate at 6.25% dated March 19, 2010 – see Attachment 1)] endorsed improperly and held by whoever has it right then, is meaningless as to standing in this case unless JP Morgan Chase **can show** the asset trust, who is the actual party in interest  they are acting for, holds assignment of the Notes so that they would be holders of it for them. But they **can't** because even though they have it and are the holders of it at this time they **are not** the legal contractual assignees of it. But as I pointed out before, **nothing** has been provided in their Answers showing JP Morgan Chase has been granted assigment or is the legal holder of the mortgage, again, which is who the Affiant and JP Morgan Chase acknowledges they are acting for (See Attachment 2 – Uniform

Commercial Code Committee for further explanation). Furthermore, even if they could show this, I found **no filings** for this Asset Trust with the **SEC** as is required by law. The sale of my debt instruments to such an entity that does not so exist under the laws of some state or the federal government to own them is **invalid** and therefore can convey **no** rights to support any action by JP Morgan Chase Bank in its behalf.

In protection of its own interests the court **must** force JP Morgan Chase Bank that they do hold assignment to my Notes. Then, please refer to the markings plainly show whoever holds the Note now has received it as a commerical paper negotiable equity asset in value of substantive money equivalence and a deposit or monetary conversion of it into equity has been made into the bank and gained as money on its books in exchange for it, to recover its purchase of the loan, without that risk of loss represented to me in the Agreement.

I see that the endorsement reads, [Without Recourse Pay to the order of JP Morgan Chase] and then there **is no** signature at all as authorized Agent signing for Just Mortgage, Inc., leaving another blank space above the signature to represent the Note is counted as being endorsed to whoever is the actual holder of it at the present time.

But those receiving the Note were the ones paying money to the previous holder to buy the Note from them. Yet, the endorsement

reads that these new blank endorsees who were paying money to

buy the Note were themselves being paid in this exchange. But

the only thing they got was the Note.

"Pay to the order of" on the Note is the language used when a

check or other equity asset is cashed or deposited.  "Pay to the

order of" means money. It never means anything but money. You

can't pay anything except money in some form. And the

endorsement on the Note written "pay" to the order of these same

banks who were paying out money to get the Note, is clearly

instructions from the seller's office who should sign it to

"pay" or transfer the Note as commercial paper of money or money

equivalence to whatever bank was becoming the buyer and holder

of it.

These buyers of the Note were thus regaining their monetary cost

for it back on to the bank's books from their receipt of the

Note as this asset or deposit of commerical paper equity of

money or money equivalent deposit money credit which is the

Note, recovering their cost to purchase the Loan, without their

still having the continued risk of loss represented to me in the

agreement that was the basis for my acceptance of the

obligations of the Contract.

Their use of the Note in this way is further established by the

authority of legal definition in federal law of a deposit in

12 USC Sect 1813. A deposit is "the unpaid balance of money or

its equivalent" received or held by a bank. Any such account or instrument must be regarded as evidencing the receipt of the equivalent of money when credited or issued in exchange for among other things "a Promissory Note". That's what a deposit is, "the receipt of the equivalent of money". And this Note is included in what may be received as the "the equivalent of money" and credited as such on the bank's books "in exchange for it".

As I said,"Pay to the order of" on the Note is the language used when a check or other equity asset is deposited and again is prima facie evidence what the buyers did with the Note here, which the inclusion of a Note in the lawful definition of a "deposit", shows is a standard banking practice.

And by the authority of legal definition in federal law, the bank has, in fact, gained monetary conversion of the commercial paper money equivalent equity asset of my Note as equity converted into money on its books which has funded or offset the funding of at least 90% of the Loan.

By its "deposit" they have converted the equity of it into money on the bank's books which has offset any loss or damage.

All this is unrebutted by the bank, and these facts of the bank's action to recover on the debt instrument itself  is now

All this is unrebutted by the bank, and these facts of the

bank's action to recover on the debt instrument itself  is now

supported by evidence of its deposit and receipt of it as money

in the full meaning of federal definition in law, and at a

minimum raises material question as to whether these banks have

complied with the representations of this Contract to have made

a Loan or purchase of it they have the equitable risk of loss to

recover represented to me in their Agreement, that was not

regained in deposit or monetary conversion of the debt

instruments they got from me.

In order to enforce a debt obligation secured by a Mortgage and

Note, a party **must** be in possession of the Note. See Premier

Capital, Inc. v Doucette, 2002 ME 83,§ 7, 797 A.2d 32 34

(describing a Note associated with a mortgage as a negotiable

instrument) as follows:

    (1) The holder of the authentic and genuine instrument.

    (2) A nonholder in possession of the genuine instrument who

          has the rights of a holder; or

    (3) A person not in possession of the genuine instrument who

          is entitled to enforce the instrument pursuant to

          section 3-1309 or 3-1418, subsection(4).

Based on the above, it is clearly indicated that MERS has **no**

enforceable right in my debt obligation securing my Deed of

Plaintiff to either MERS nor JP Morgan Chase, and that

represented Just Mortgage, Inc. had transferred the Note to an

unknown investor.

Defendant, Chase has gone to great lengths to **avoid producing**

**documents** to this litigation because they know that such

documents will establish all details of the **massive fraud** they

perpetrated on Plaintiff and other Nevadians plus other people

of the United States of America. By delaying production of

documents, the Defendants are buying time to cover up **their**

**fraud** and make it materially more expensive and difficult for

Plaintiff to obtain a just result.

Because Defendant, Chase's failure to state a Claim in their New

Answer To Plaintiff's Complaint, Plaintiff therefore prays the

Court to Order Defendant, Chase to **halt** its continuing efforts

to collect payments from Plaintiff that he did not owe. No

relief can be granted to Defendant until Plaintiff is cleared of

the question of ownership of his Loan created when he signed the

Interest-Only Promissory Note on March 19, 2008.


**SECOND CAUSE OF ACTION:** Violations of the Real Estate

Settlement Procedure Act (RESPA).


On October 30, 2009 Plaintiff sent RESPA Qualified Written

Request to Defendant, Chase (See Attachment 3). And, instead of answering these requests professionally, Defndant, Chase reported to the Credit Bureau and other Real Estate Agencies about Plaintiff during January 2010 which caused severe impairment to Plaintiff's credit rating.

Defendant, Chase directly and through their agents **violated** Plaintiff's inalienable privacy rights by disclosing private information **without** his knowledge, authorization or consent. This unauthorized disclosure of private information is intrusive into the most private reaches of the Plaintiff's life, and does not include information that is of a legitimate public concern as indicated in the following:

a. Possession of personal confidential information allows criminals to "breed" identities, that is, to obtain other forms of identification that may further enhance their ability to misuse another's identity.

b. Social Security numbers are among the most sought after and valuable items of personal information to an identity thief.

c. The average victim of unauthorized use of wrongfully disclosed personal confidential information spends

approximately 600 hours and $1,400 repairing his or her credit once violated.

d. Victims of identity theft also often suffer further financial loss from the denial of credit or utility services, increased difficulty in securing employment and housing, and higher insurance and credit rates. In some cases, an identity theft victim may even have a criminal record develop in his or her name.

e. It is often the case that a victim will not discover that his or her Private Information has been stolen and misused until long after an identity theft has taken place, and then only when they are denied credit or discover that their bank account has been emptied is **beyond unconscionable** for a theft victim.

f. Fundamental to privacy is the ability to control circulation of personal information. The proliferation of business records over which individuals have no control limits their ability to control their personal lives. Personal privacy is threatened by the information-gathering capabilities and activities of private business – and never more than when when a financial institution that requires personal information to permit a consumer to buy a home and obtains it with the assertion and promise it will be

personal information to permit a consumer to buy a home and
obtains it with the assertion and promise it will be

 safeguarded **fails** to safeguard that information.

g. Furthermore, as a proximate and foreseeable result of
Defendants' intentional disclosure of Plaintiffs' Private
Information, Plaintiff has suffered general damages –
including pain and suffering and emotional distress.

h. Defendant, Chase's conduct is willful, outrageous and
pervasive and not only did Defendant, Chase abuse Private
Information, willfully fail to maintain security of the
Private Information, but then disclosed it to third parties
without my permission.

i. As a proximate result of the foregoing untimely disclosure
by Defendant, Chase, the Plaintiff was damaged as described
in this Response. Plaintiff's damages also include reduced
credit scores, among others, unavailability of credit,
increased costs of credit, reduced availability of goods and
services tied to credit ratings and increased costs of those
services.

j. These undeniable disclosures by the Defendant, Chase of
nonpublic personal information of the Plaintiff also violated
the Gramm-Leach-Bliley Act, 15 U.S.C.§§ 6801 et seq.

**WHEREFORE**, Plaintiff prays for relief on the above cause of action for which attorney's fees be awarded pursuant to the governing Contract, by statute or otherwise reasonable attorney fees, for such other and further relied as this Court may deem just and proper.

Dated: This 16th day of December, 2010

BY: _Joseph A. Guerra_
Joseph A. Guerra
Plaintiff Pro Per
Signed reserving all my
rights at UCC 1-308

# **CERTIFICATE OF MAILING**

I certify that I mailed a copy of the RESPONSE TO ADDITIONAL

ANSWERS OF CHASE HOME FINANCE LLC & MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INC. TO COMPLAINT

(NRS Chapter 19) to Defendants Attorneys:

     Ms. Katie M. Weber
     SMITH LARSEN & WIXOM
     Hills Center Business Park
     1935 Village Center Circle
     Las Vegas, Nevada  89134

     Mr. Albert Lum
     YEROUSHALMI & ASSOCIATES
     9100 Wilshire Boulevard, Suite 610 E
     Beverly Hills, CA  90212

On this _____16th_____ day of _December_, 2010

_____
SIGNATURE   Beata Hu
Tel:  (702)-487-1488

# ATTACHMENT

# 1

MIN: 1001871-0051161451-4                          Loan Number: 0051161451

# INTEREST-ONLY PERIOD FIXED RATE NOTE

MARCH 19, 2008                    IRVINE                          CALIFORNIA
    [Date]                         [City]                           [State]

8938 WEST KATIE AVENUE, LAS VEGAS, NEVADA 89147
                    [Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $273,000.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is JUST MORTGAGE INC., A CALIFORNIA CORPORATION                                                                     .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.250  %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month. This payment will be for interest only for the first  120   months, and then will consist of principal and interest.

I will make my monthly payment on the  1st   day of each month beginning on MAY 1 2008                  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal. If, on    APRIL 1, 2038    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  9680 HAVEN AVENUE, SUITE 200, RANCHO CUCAMONGA, CALIFORNIA 91730
                                                 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,421.88      for the first  120   months of this Note, and thereafter will be in the amount of U.S. $1,995.43      . The Note Holder will notify me prior to the date of change in monthly payment.

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. However, if the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest as well as during the time that my payments consist of principal and interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease; however, the principal and the interest required under this Note will be paid prior to the Maturity Date.

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE
Single Family - Fannie Mae UNIFORM INSTRUMENT
Form 3271 1/01 (rev. 09/06)                    Page 1 of 4

DocMagic *eForms* 800-649-1362
www.docmagic.com

**5.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000  % of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE
Single Family - Fannie Mae UNIFORM INSTRUMENT
Form 3271 1/01 (rev. 09/06)                    Page 2 of 4

DocMagic *eFDrmms*  800-649-1362
*www.docmagic.com*

be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE
Single Family - Fannie Mae UNIFORM INSTRUMENT
Form 3271 1/01 (rev. 09/06)                    Page 3 of 4

DocMagic *eForms* 800-649-1362
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
JOSEPH A. GUERRA, JR    -Borrower                           -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                                    -Borrower

*[Sign Original Only]*

MULTISTATE INTEREST-ONLY PERIOD FIXED RATE NOTE
Single Family - Fannie Mae UNIFORM INSTRUMENT
Form 3271 1/01 (rev. 09/06)          Page 4 of 4

DocMagic *eForms* 800-649-1362
*www.docmagic.com*

# ALLONGE

**Loan Number:**  0051161431

**Loan Date:** MARCH 19, 2008

**Borrower(s):**  JOSEPH A. GUERRA, JR

**Property Address:**  8938 WEST KATIE AVENUE
LAS VEGAS, NEVADA 89147

**Principal Balance:** $273,000.00

### PAY TO THE ORDER OF

JPMORGAN CHASE BANK, N.A.

**Without Recourse**

Company Name: JUST MORTGAGE INC.

By: _____        _____
       (Name)                                              (Title)

DocMagic eForms 800-649-1362
www.docmagic.com

# ALLONGE TO NOTE

LOAN #: 0051161451

PROPERTY ADDRESS:  8938 WEST HATIE AVENUE
                   LAS VEGAS, NEVADA 89147

PRINCIPAL BALANCE: $177,000.00

ALLONGE TO NOTE DATED:  MARCH 19, 2004

IN FAVOR OF  JUST MORTGAGE INC., A CALIFORNIA CORPORATION

AND EXECUTED BY
JOSEPH A. GUERRA, JR

PAY TO THE ORDER OF

WITHOUT RECOURSE
JUST MORTGAGE INC., A CALIFORNIA CORPORATION

BY:_____

TITLE:

ALLONGE TO NOTE
10/14/05

MIN: 1003787A-0051161451-4                    Loan Number: 0051161451

# INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published In *The Wall Street Journal*)
### Rate Caps – 10 Year Interest Only Period)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

MARCH 11, 2008                    IRVINE                    CALIFORNIA
[Date]                           [City]                    [State]

8938 WEST KATIE AVENUE, LAS VEGAS, NEVADA 89147
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 273,000.00         (this amount is called "Principal"), plus interest, to the order of Lender. Lender is   JUST MORTGAGE INC., A CALIFORNIA CORPORATION.
I will make all payments under this Note in the form of cash, check, or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        5.750 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will make a payment on the   1st    day of every month, beginning on    MAY 1 , 2008          . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on   APRIL 1, 2038        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at    9680 HAVEN AVENUE, SUITE 290, RANCHO CUCAMONGA, CALIFORNIA 91730                or at a different place if required by the Note Holder.



CERTIFIED TO BE A TRUE, CORRECT
AND COMPLETE COPY OF THE ORIGINAL
DOCUMENT
BY
DocMagic Company
www.docmagic.com
IRVINE FUNDING

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
- ONE-YEAR LIBOR INDEX – 10 YR. INTEREST ONLY PERIOD
- Single Family – Fannie Mae MODIFIED INSTRUMENT                    Page 1 of 5
Form 3535  05/05 (rev. 09/06)

JMI0001

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,408.13          until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the       1st      day of APRIL, 2015          , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding       TWO AND 250/1000          percentage points (   2.250   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than        10.750   % or less than        2.250   %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than      TWO AND 000/1000         percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than        10.750   %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

By: _____

A TRUE, CORRECT
COMPLETE COPY OF THE ORIGINAL
DOCUMENT.
IRVINE FINLEY
DocMagic
www.docmagic.com

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
ONE-YEAR LIBOR INDEX - 10-YR. INTEREST ONLY PERIOD
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3935  08/05 (rev. 05/06)          Page 2 of 6

JMI0002

(F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, any partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ___15___ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

MULTISTATE INTEREST ONLY PERIOD ADJUSTABLE RATE NOTE
ONE-YEAR LIBOR INDEX - 10-YR. INTEREST ONLY PERIOD
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3535   05/05 (rev. 09/05)          Page 3 of 6

JM10003

(B)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

MULTISTATE INTEREST ONLY PERIOD ADJUSTABLE RATE NOTE
ONE YEAR LIBOR INDEX - TO YR. INTEREST ONLY PERIOD
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3535   06/06 (rev. 09/06)                Page 4 of 6

DocMagic [Illegible] 800-649-1362
www.docmagic.com

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)  When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
ONE-YEAR LIBOR INDEX - 10 YR. INTEREST ONLY PERIOD
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3535  06/05  (rev 08/06)                    Page 5 of 5

DocMagic EFarms  800-649-1362
www.docmagic.com

JMI0005

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
JOSEPH A. GUERRA, JR.    -Borrower                                          -Borrower


_____ (Seal)                    _____ (Seal)
                         -Borrower                                          -Borrower


_____ (Seal)                    _____ (Seal)
                         -Borrower                                          -Borrower

MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE
ONE-YEAR LIBOR INDEX - 10 YR. INTEREST ONLY PERIOD
Single Family - Fannie Mae MODIFIED INSTRUMENT
Form 3535  06/05 (rev. 09/06)                    Page 6 of 6

DocMagic eForms 800-649-1362
www.docmagic.com

JM10006

# ATTACHMENT

# 2

<u>UNIFORM COMMERCIAL CODE COMMITTEE</u>

**WHERE'S THE NOTE, WHO'S THE HOLDER: ENFORCEMENT OF PROMISSORY NOTE SECURED BY REAL ESTATE**

HON. SAMUEL L. BUFFORD
UNITED STATES BANKRUPTCY JUDGE
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES, CALIFORNIA

(FORMERLY HON.) R. GLEN AYERS
LANGLEY & BANACK
SAN ANTONIO, TEXAS

AMERICAN BANKRUPTCY INSTUTUTE
APRIL 3, 2009
WASHINGTON, D.C.

**WHERE'S THE NOTE, WHO'S THE HOLDER**

INTRODUCTION

In an era where a very large portion of mortgage obligations have been securitized, by assignment to a trust indenture trustee, with the resulting pool of assets being then sold as mortgage backed securities, foreclosure becomes an interesting exercise, particularly where judicial process is involved. We are all familiar with the securitization process. The steps, if not the process, is simple. A borrower goes to a mortgage lender. The lender finances the purchase of real estate. The borrower signs a note and mortgage or deed of trust. The original lender sells the note and assigns the mortgage to an entity that securitizes the note by combining the note with hundreds or thousands of similar obligation to create a package of mortgage backed securities, which are then sold to investors.

Unfortunately, unless you represent borrowers, the vast flow of notes into the maw of the securitization industry meant that a lot of mistakes were made. When the borrower defaults, the party seeking to enforce the obligation and foreclose on the underlying collateral sometimes cannot find the note. A lawyer sophisticated in this area has speculated to one of the authors that perhaps a third of the notes "securitized" have been lost or destroyed. The cases we are going to look at reflect the stark fact that the unnamed source's speculation may be well-founded.

UCC SECTION 3-309

If the issue were as simple as a missing note, UCC §3-309 would provide a simple solution. A person entitled to enforce an instrument which has been lost, destroyed or stolen may enforce the instrument. If the court is concerned that some third party may show up and attempt to enforce the instrument against the payee, it may order adequate protection. But, and however, a person seeking to enforce a missing instrument must be a person entitled to enforce the instrument, and that person must prove the instrument's terms and that person's right to enforce the instrument. §3-309 (a)(1) & (b).

**WHO'S THE HOLDER**

Enforcement of a note always requires that the person seeking to collect show that it is the holder. A holder is an entity that has acquired the note either as the original payor or transfer by endorsement of order paper or physical possession of bearer paper. These requirements are set out in Article 3 of the Uniform Commercial Code, which has been adopted in every state, including Louisiana, and in the District of Columbia. Even in bankruptcy proceedings, State substantive law controls the rights of note and lien holders, as the Supreme Court pointed out almost forty (40) years ago in *United States v. Butner*, 440 U.S. 48, 54-55 (1979).

However, as Judge Bufford has recently illustrated, in one of the cases discussed below, in the bankruptcy and other federal courts, procedure is governed by the Federal Rules of Bankruptcy and Civil Procedure. And, procedure may just have an impact on the issue of "who," because, if the holder is unknown, pleading and standing issues arise.

2

**BRIEF REVIEW OF UCC PROVISIONS**

Article 3 governs negotiable instruments — it defines what a negotiable instrument is and defines how ownership of those pieces of paper is transferred. For the precise definition, see § 3-104(a) ("an unconditional promise or order to pay a fixed amount of money, with or without interest . . . .") The instrument may be either payable to order or bearer and payable on demand or at a definite time, with or without interest.

Ordinary negotiable instruments include notes and drafts (a check is a draft drawn on a bank). See § 3-104(e).

Negotiable paper is transferred from the original payor by negotiation. §3-301. "Order paper" must be endorsed; bearer paper need only be delivered. §3-305. However, in either case, for the note to be enforced, the person who asserts the status of the holder must be in possession of the instrument. *See* UCC § 1-201 (20) and comments.

The original and subsequent transferees are referred to as holders. Holders who take with no notice of defect or default are called "holders in due course," and take free of many defenses. See §§ 3-305(b).

The UCC says that a payment to a party "entitled to enforce the instrument" is sufficient to extinguish the obligation of the person obligated on the instrument. Clearly, then, only a holder — a person in possession of a note endorsed to it or a holder of bearer paper — may seek satisfaction or enforce rights in collateral such as real estate.

NOTE: Those of us who went through the bank and savings and loan collapse of the 1980's are familiar with these problems. The FDIC/FSLIC/RTC sold millions of notes secured and unsecured, in bulk transactions. Some notes could not be found and enforcement sometimes became a problem. Of course, sometimes we are forced to repeat history. For a recent FDIC case, *see Liberty Savings Bank v. Redus*, 2009 WL 41857 (Ohio App. 8 Dist.), January 8, 2009.

**THE RULES**

Judge Bufford addressed the rules issue this past year. *See In re Hwang*, 396 B.R. 757 (Bankr. C. D. Cal. 2008). First, there are the pleading problems that arise when the holder of the note is unknown. Typically, the issue will arise in a motion for relief from stay in a bankruptcy proceeding.

0According F.R.Civ. Pro. 17, "[a]n action must be prosecuted in the name of the real party in interest." This rule is incorporated into the rules governing bankruptcy procedure in several ways. As Judge Bufford has pointed out, for example, in a motion for relief from stay, filed under F.R.Bankr.Pro. 4001 is a contested matter, governed by F. R. Bankr. P. 9014, which makes F.R. Bankr. Pro. 7017 applicable to such motions. F.R. Bankr. P. 7017 is, of course, a restatement of F.R. Civ. P. 17. *In re Hwang*, 396 B.R. at 766. T0he real party in interest in a federal action to enforce a note, whether in bankruptcy court or federal district court, is the owner of a note. (In securitization transactions, this would be the trustee for the "certificate

3

holders.") When the actual holder of the note is unknown, it is impossible – not difficult but impossible – to plead a cause of action in a federal court (unless the movant simply lies about the ownership of the note). Unless the name of the actual note holder can be stated, the very pleadings are defective.

## STANDING

Often, the servicing agent for the loan will appear to enforce the note. Assume that the servicing agent states that it is the authorized agent of the note holder, which is "Trust Number 99." 0The servicing agent is certainly a party in interest, since a party in interest in a bankruptcy court is a very broad term or concept. *See, e.g., Greer v. O'Dell*, 305 F.3d 1297, 1302-03 (11th Cir. 2002). However, the servicing agent may not have standing: "Federal Courts have only the power authorized by Article III of the Constitutions and the statutes enacted by Congress pursuant thereto. ... [A] plaintiff must have Constitutional standing in order for a federal court to have jurisdiction." *In re Foreclosure Cases*, 521 F.Supp. 3d 650, 653 (S.D. Ohio, 2007) (citations omitted).

But, the servicing agent does not have standing, for only a person who is the holder of the note has standing to enforce the note. 0*See, e.g., In re Hwang*, 2008 WL 4899273 at 8.

T0he servicing agent may have standing if acting as an agent for the holder, assuming that the agent can both show agency status and that the principle is the holder. *See, e.g., In re Vargas*, 396 B.R. 511 (Bankr. C.D. Cal. 2008) at 520.

## A BRIEF ASIDE: 0WHO IS MERS?

For those of you who are not familiar with the entity known as MERS, a frequent participant in these foreclosure proceedings:

MERS is the "Mortgage Electronic Registration System, Inc. "MERS is a mortgage banking 'utility' that registers mortgage loans in a book entry system so that ... real estate loans can be bought, sold and securitized, just like Wall Street's book entry utility for stocks and bonds is the Depository Trust and Clearinghouse." Bastian, "Foreclosure Forms", State. Bar of Texas **17th Annual Advanced Real Estate Drafting Course**, March 9-10, 2007, Dallas, Texas. MERS is enormous. It originates thousands of loans daily and is the mortgagee of record for at least 40 million mortgages and other security documents. *Id.*

MERS acts as agent for the owner of the note. Its authority to act should be shown by an agency agreement. Of course, if the owner is unknown, MERS cannot show that it is an authorized agent of the owner.

## RULES OF EVIDENCE – A PRACTICAL PROBLEM

This structure also possesses practical evidentiary problems where the party asserting a right to foreclose must be able to show a default. Once again, Judge Bufford has addressed this issue. At *In re Vargas*, 396 B.R. at 517-19. Judge Bufford made a finding that the witness

4

called to testify as to debt and default was incompetent. All the witness could testify was that he had looked at the MERS computerized records. The witness was unable to satisfy the requirements of the Federal Rules of Evidence, particularly Rule 803, as applied to computerized records in the Ninth Circuit. *See id.* at 517-20. The low level employee could really only testify that the MERS screen shot he reviewed reflected a default. That really is not much in the way of evidence, and not nearly enough to get around the hearsay rule.

## 0FORECLOSURE OR RELIEF FROM STAY

In a foreclosure proceeding in a judicial foreclosure state, or a request for injunctive relief in a non-judicial foreclosure state, or in a motion for relief proceeding in a bankruptcy court, the courts are dealing with and writing about the problems very frequently.

In many if not almost all cases, the party seeking to exercise the rights of the creditor will be a servicing company. Servicing companies will be asserting the rights of their alleged principal, the note holder, which is, again, often going to be a trustee for a securitization package. The mortgage holder or beneficiary under the deed of trust will, again, very often be MERS.

Even before reaching the practical problem of debt and default, mentioned above, the moving party must show that it holds the note or (1) that it is an agent of the holder and that (2) the holder remains the holder. In addition, the owner of the note, if different from the holder, must join in the motion.

Some states, like Texas, have passed statutes that allow servicing companies to act in foreclosure proceedings as a statutorily recognized agent of the noteholder. *See, e.g.,* Tex. Prop. Code §51.0001. However, that statute refers to the servicer as the last entity to whom the debtor has been instructed to make payments. This status is certainly open to challenge. The statute certainly provides nothing more than *prima facie* evidence of the ability of the servicer to act. If challenged, the servicing agent must show that the last entity to communicate instructions to the debtor is still the holder of the note. *See, e.g., HSBC Bank, N.A. v. Valentin,* 21 N.Y. Misc. 3d 1123(A), 2008 WL 4764816 (Table) (N.Y. Sup.), Nov. 3, 2008. In addition, such a statute does not control in federal court where Fed. R. Civ. P. 17 and 19 (and Fed. R. Bankr. P. 7017 and 7019) apply.

## SOME RECENT CASE LAW

These cases are arranged by state, for no particular reason.

Massachusetts

*In re Schwartz,* 366 B.R.265 (Bankr. D. Mass. 2007)

*Schwartz* concerns a Motion for Relief to pursue an eviction. Movant asserted that the property had been foreclosed upon prior to the date of the bankruptcy petition. The *pro se* debtor asserted that the Movant was required to show that it had authority to conduct the sale. Movant,

and "the party which appears to be the current mortgagee..." provided documents for the court to review, but did not ask for an evidentiary hearing. Judge Rosenthal sifted through the documents and found that the Movant and the current mortgagee had failed to prove that the foreclosure was properly conducted.

Specifically, Judge Rosenthal found that there was no evidence of a proper assignment of the mortgage prior to foreclosure. However, at footnote 5, *Id.* at 268, the Court also finds that there is no evidence that the note itself was assigned and no evidence as to who the current holder might be.

*Nosek v. Ameriquest Mortgage Company (In re Nosek)*, 286 Br. 374 (Bankr D Mass. 2008).

Almost a year to the day after *Schwartz* was signed, Judge Rosenthal issued a second opinion. This is an opinion on an order to show cause. Judge Rosenthal specifically found that, although the note and mortgage involved in the case had been transferred from the originator to another party within five days of closing, during the five years in which the chapter 13 proceeding was pending, the note and mortgage and associated claims had been prosecuted by Ameriquest which has represented itself to be the holder of the note and the mortgage. Not until September of 2007 did Ameriquest notify the Court that it was merely the servicer. In fact, only after the chapter 13 bankruptcy had been pending for about three years was there even an assignment of the servicing rights. *Id.* at 378.

Because these misrepresentations were not simple mistakes: as the Court has noted on more than one occasion, those parties who do not hold the note of mortgage do not service the mortgage do not have standing to pursue motions for leave or other actions arising form the mortgage obligation. *Id* at 380.

As a result, the Court sanctioned the local law firm that had been prosecuting the claim $25,000. It sanctioned a partner at that firm an additional $25,000. Then the Court sanctioned the national law firm involved $100,000 and ultimately sanctioned Wells Fargo $250,000. *Id.* at 382-386.

*In re Hayes*, 393 B.R. 259 (Bankr. D. Mass. 2008).

Like Judge Rosenthal, Judge Feeney has attacked the problem of standing and authority head on. She has also held that standing must be established before either a claim can be allowed or a motion for relief be granted.

Ohio

*In re Foreclosure Cases*, 521 F.Supp. 2d (S.D. Ohio 2007).

Perhaps the District Court's orders in the foreclosure cases in Ohio have received the most press of any of these opinions. Relying almost exclusively on standing, the Judge Rose has determined that a foreclosing party must show standing. "[I]n a foreclosure action, the plaintiff

6

must show that it is the holder of the note and the mortgage at the time that the complaint was filed." *Id.* at 653.

Judge Rose instructed the parties involved that the willful failure of the movants to comply with the general orders of the Court would in the future result in immediate dismissal of foreclosure actions.

*Deutsche Bank Nat'l Trust Co. v. Steele*, 2008 WL 111227 (S.D. Ohio) January 8, 2008.

In *Steele*, Judge Abel followed the lead of Judge Rose and found that Deutsche Bank had filed evidence in support of its motion for default judgment indicating that MERS was the mortgage holder. There was not sufficient evidence to support the claim that Deutsche Bank was the owner and holder of the note as of that date. Following *In re Foreclosure Cases*, 2007 WL 456586, the Court held that summary judgment would be denied "until such time as Deutsche Bank was able to offer evidence showing, by a preponderance of evidence, that it owned the note and mortgage when the complaint was filed." 2008 WL 111227 at 2. Deutsche Bank was given twenty-one days to comply. *Id.*

Illinois

*U.S. Bank, N.A. v. Cook*, 2009 WL 35286 (N.D. Ill. January 6, 2009).

Not all federal district judges are as concerned with the issues surrounding the transfer of notes and mortgages. *Cook* is a very pro lender case and, in an order granting a motion for summary judgment, the Court found that Cook had shown no "countervailing evidence to create a genuine issue of facts." *Id.* at 3. In fact, a review of the evidence submitted by U.S. Bank showed only that it was the alleged trustee of the securitization pool. U.S. Bank relied exclusively on the "pooling and serving agreement" to show that it was the holder of the note. *Id.*

Under UCC Article 3, the evidence presented in *Cook* was clearly insufficient.

New York

*HSBC Bank USA, N.A. v. Valentin*, 21 Misc. 3D 1124(A), 2008 WL 4764816 (Table) (N.Y. Sup.) November 3, 2008. In *Valentin*, the New York court found that, even though given an opportunity to, HSBC did not show the ownership of debt and mortgage. The complaint was dismissed with prejudice and the "notice of pendency" against the property was cancelled.

Note that the *Valentin* case does not involve some sort of ambush. The Court gave every HSBC every opportunity to cure the defects the Court perceived in the pleadings.

California

*In re Vargas*, 396 B.R. 511 (Bankr. C.D. Cal. 2008)

7

and

*In re Hwang*, 396 B.R. 757 (Bankr. C.D. Cal. 2008)

These two opinions by Judge Bufford have been discussed above.  Judge Bufford carefully explores the related issues of standing and ownership under both federal and California law.

Texas

*In re Parsley*, 384 B.R. 138 (Bankr. S.D. Tex. 2008)

and

*In re Gilbreath*, 395 B.R. 356 (Bankr. S.D. Tex. 2008)

These two recent opinions by Judge Jeff Bohm are not really on point, but illustrate another thread of cases running through the issues of motions for relief from stay in bankruptcy court and the sloppiness of loan servicing agencies.  Both of these cases involve motions for relief that were not based upon fact but upon mistakes by servicing agencies.  Both opinions deal with the issue of sanctions and, put simply, both cases illustrate that Judge Bohm (and perhaps other members of the bankruptcy bench in the Southern District of Texas) are going to be very strict about motions for relief in consumer cases.

**SUMMARY**

The cases cited illustrate enormous problems in the loan servicing industry.  These problems arise in the context of securitization and illustrate the difficulty of determining the name of the holder, the assignee of the mortgage, and the parties with both the legal right under Article 3 and the standing under the Constitution to enforce notes, whether in state court or federal court.

Interestingly, with the exception of Judge Bufford and a few other judges, there has been less than adequate focus upon the UCC title issues.  The next round of cases may and should focus upon the title to debt instrument.  The person seeking to enforce the note must show that:

(1)     It is the holder of this note <u>original</u> by transfer, with all necessary rounds;
(2)     It had possession of the note before it was lost;
(3)     If it can show that title to the note runs to it, but the original is lost or destroyed, the holder must be prepared to post a bond;
(4)     If the person seeking to enforce is an agent, it must show its agency status <u>and</u> that its principal is the holder of the note (and meets the above requirements).

Then, and only then, do the issues of evidence of debt and default and assignment of mortgage rights become relevant.

8

# ATTACHMENT

# 3

Case 2:10-cv-00029-KJD-RJJ   Document 53   Filed 12/16/10   Page 37 of 50
Case 2:10-cv-00029-KJD-RJJ   Document 40-1   Filed 05/07/10   Page 2 of 15

Case 2:10-cv-00029-KJD-RJJ   Document 22-2   Filed 03/15/10   Page 3 of 22
Certified Mail # 7007 3020 0000 3524 3301

JOSEPH A. GUERRA
8938 W. Katie Ave
Las Vegas, NV 89147

CHASE HOME FINANCE
3415 Vision Drive
Columbus, OH 43219

Certified #2306 1570 0000 6139
CC: JUST MORTGAGE, INC.        -3378
     9680 Haven Avenue, Suite #200
     Rancho Cucamonga, Ca. 91730
     Loan #0051161451

ATTN: ACCOUNT MANAGER RE: ACCOUNT NUMBER # 1880539539.

**FOR INDEPEDANT CONFIRMATION OF RECIEPT OF YOUR RESPONSES, PLEASE MAIL A COPY OF ANY RESPONSE TO THE FOLLOWING ADDRESS:**

TOTAL EQUITY INC.
P.O. BOX 7468
BONNEY LAKE, WA 98391

10/30/09

## RESPA QUALIFIED WRITTEN REQUEST, TILA REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER

### This letter is a "qualified written request" in compliance with, and under, the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e) and Regulation X at 24 C.F.R. 3500, and The Gramm Leach Bliley Act

Dear Madam or Sir:

I am writing to you to complain about the accounting and servicing of this alleged mortgage. Specifically, I am, among other things, seeking servicing information regarding a potential payment dispute and/or accounting errors. This is due, in part, to the fact that, in spite of suggestive language in the note I provided, I am not able to find any evidence that an actual loan was received. If no loan was received by me, certainly no loan was provided, and that would indicate that an entirely different kind of transaction took place than the kind I were led to believe had occurred.

Therefore, I will request clarification of various sales, transfers, funding sources, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date. Did I "receive" a loan BEFORE the date I signed the note, as the note clearly indicates I did? If so, I need you to clearly document that for me. If I did "receive" a loan, you should have no problem providing that documentation.

RESPA REQUEST                    Page 1 of 14

Case 2:10-cv-00029-KJD-RJJ Document 53 Filed 12/16/10 Page 38 of 50
Case 2:10-cv-00029-KJD-RJJ Document 40-1 Filed 05/07/10 Page 3 of 15

Case 2:10-cv-00029-KJD-RJJ Document 22-2 Filed 03/15/10 Page 4 of 22
Certified Mail # 7007 3020 0000 3524 3301

Further, I am troubled that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected my credit rating, mortgage account and/or the debt or payments that I am currently making, or may be legally obligated to make.

In light of the above, I hereby demand that you provide the following four categories of documentation:

> First: absolute first-hand evidence from you that you are the holder of the original uncertificated or certificated security regarding account number 1880539539.

> Second: records that definitively show a chain of transfer from you to whoever and wherever the security is now being held, clearly identifying the entity that currently holds the security, which is the legal basis of the mortgage, account, and/or the alleged debt or payments that I am currently, or may be, legally obligated to continue to pay.

> Third: the below-described requested information, answers, and records which will both constitute proof that you are able to validate this "debt", and make it possible for me to have a thorough independent review completed.

> Fourth: a rebuttal to the attached Exhibit "A", which, by this reference, is made part of this RESPA QUALIFIED WRITTEN REQUEST, TILA REQUEST, COMPLAINT, DISPUTE OF DEBT & VALIDATION OF DEBT LETTER. The rebuttal cannot rely on second-hand information or any documents I may have signed, such as the NOTE, which asserts that I did receive a loan as such an assertion is not verified evidence of a loan having been received by me. Said rebuttal must take into consideration the long-established facts outlined in the included, and attached by reference, support document titled "Exhibit B".

As I am sure you know, absent the actual certified evidence of the security and the alleged loan, I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you allege that I owe. It is my belief at this time that this is not a valid debt and, therefore, it is disputed and this RESPA REQUEST also serves as your notice of my dispute of this "debt".

And by "debt", I am referring to the principal balance you claim I owe; the calculated monthly payment, the calculated escrow payment, and any fees claimed to be owed by you or any trust or entity you may service or subservice for.

**To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information [if any] to any credit reporting agency until you respond to each of the following requests:**

I request that you conduct your own investigation and audit of this account since its inception in order to validate the debt you currently claim I owe. Once complete, I require that you send me the results of your work, presented in a format, and in terms, that would be understandable to the average "layman".

RESPA REQUEST                    Page 2 of 14

Case 2:10-cv-00029-KJD-RJJ   Document 53   Filed 12/16/10   Page 39 of 50
Case 2:10-cv-00029-KJD-RJJ   Document 40-1   Filed 05/07/10   Page 4 of 15

Case 2:10-cv-00029-KJD-RJJ   Document 22-2   Filed 03/15/10   Page 5 of 22
Certified Mail # 7007 3020 0000 3524 3301

I request that you validate this alleged debt so that it is accurate to the penny. Once complete, I require that you send me the results of your work, presented in a format, and in terms, that would be understandable to the average "layman".

In completing the above-described investigation, audit, and validation, I insist that you *not* rely on the records of previous servicers or originators', or the assurances or the indemnity agreements of any such previous servicers or originators, or any previous refusals to conduct a full audit and investigation of this account.

As this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 § 2605 (e)(1)(B) (ii) and Reg. X § 3500.21(f)2 of the United States Code, as well as a request under Truth In Lending Act [TILA] 15 U.S.C. § 1601, et seq., **RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within sixty [60] days of its receipt.**

In order to conduct an accurate examination and audit of this alleged loan, you are asked to provide full and immediate disclosure, including copies of ALL pertinent information regarding this alleged loan. This will ensure that...

- This alleged loan was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Act, HOEPA and other laws;

- Any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all interested parties;

- The claimed holder in due course of the monetary instrument/deed of trust/asset is holding it in compliance with all applicable laws, and is entitled to the benefits of payments;

- All good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were, and still are, properly disclosed to me;

- Each servicer and/or sub-servicer of this mortgage has serviced this mortgage in accordance with statute, laws, and the terms of the mortgage, monetary instrument/deed of trust;

- Each servicer and sub-servicer of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations;

- This mortgage account has properly been credited, debited, adjusted, amortized and charged correctly;

- Interest and principal have been properly calculated and applied to this alleged loan;

- Any principal balance has been properly calculated, amortized and accounted for;

- No charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account; and that

- An actual loan, and not a fraud, occurred. Did I "receive" a loan as the note unambiguously affirms? And if I did receive a loan, did I receive it BEFORE the date on the note, AS THE NOTE UNAMBIGUOUSLY AFFIRMS?

RESPA REQUEST                    Page 3 of 14

Case 2:10-cv-00029-KJD-RJJ Document 53 Filed 12/16/10 Page 40 of 50
Case 2:10-cv-00029-KJD-RJJ Document 40-1 Filed 05/07/10 Page 5 of 15
Case 2:10-cv-00029-KJD-RJJ Document 22-2 Filed 03/15/10 Page 6 of 22

Certified Mail # 7007 3020 0000 3524 3301

In order to validate this debt and audit this account, I will request that you provide me with copies of pertinent documents, a legitimate and reasonable request that, under the law, I have a right to make. I will also request written answers to various servicing questions. Those written answers will need to be _certified_ by officials at your company who are authorized to do so, and I request that such company officials performing such certification be named somewhere on each document being so certified. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program, or database used by you that contains any information on this account number or my name.

As such, as soon as possible, but in no more than 60 days from your receipt of this letter, please send to me, at the above address, copies of the documents requested below:

- All certificated or uncertificated security, front and back, used for the funding of account # 1880539539.
- All "Pool Agreement(s)" including account # 1880539539 between CHASE HOME FINANCE and any government sponsored entity, hereinafter "GSE".
- All "Deposit Agreement(s)" regarding account # 1880539539 or the "Pool Agreement" including account # 1880539539 between CHASE HOME FINANCE and any GSE.
- All "Servicing Agreement(s)" between CHASE HOME FINANCE and any GSE.
- All "Custodial Agreement(s)" between CHASE HOME FINANCE and any GSE.
- All "Master Purchasing Agreement" between CHASE HOME FINANCE and any GSE.
- All "Issuer Agreement(s)" between CHASE HOME FINANCE and any GSE.
- All "Commitment to Guarantee" agreement(s) between CHASE HOME FINANCE and any GSE.
- All "Release of Document agreements" between CHASE HOME FINANCE and any GSE.
- All "Master Agreement for servicer's Principle and Interest Custodial Account" between CHASE HOME FINANCE and any GSE.
- All "Servicers Escrow Custodial Account" between CHASE HOME FINANCE and any GSE.
- All "Release of Interest" agreements between CHASE HOME FINANCE and any GSE.
- Any Trustee agreement(s) between CHASE HOME FINANCE and CHASE HOME FINANCE's trustee regarding account # 1880539539 or pool accounts with any GSE.
- Any documentation evidencing the trust relationship between the Mortgage/Deed of Trust **and** the Note in this matter.
- Copies of all documents that establish the Trustee of record for the Mortgage/Deed of Trust **and** the Note.
- Copies of all documents that establish the date of the appointment of the Trustee of the Mortgage/Deed of Trust **and** the Note. Please also include all assignments or transfers or nominees of any substitute trustee(s).

RESPA REQUEST                    Page 4 of 14

Case 2:10-cv-00029-KJD-RJJ    Document 53    Filed 12/16/10    Page 41 of 50
Case 2:10-cv-00029-KJD-RJJ    Document 40-1    Filed 05/07/10    Page 6 of 15
Case 2:10-cv-00029-KJD-RJJ    Document 22-2    Filed 03/15/10    Page 7 of 22
Certified Mail # 7007 3020 0000 3524 3301

- Copies of all documents that establish a Grantor for this Mortgage/Deed of Trust **and** the Note.

- Copies of all documents that establish a Grantee for this Mortgage/Deed of Trust **and** the Note.

- Copies of all documents that establish a Beneficiary for this Mortgage/Deed of Trust **and** the Note.

- All documentation showing that the Mortgage, or the Deed of Trust, is **not** a constructive trust or any other form of trust.

- All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to, Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the present date.

- All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts retained to audit and review this mortgage account may properly conduct their work.

- All assignments, transfers, allonge, or other document evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignments on, to, or from, MERS.

- All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on, to, or from, MERS.

- All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

- A copy of the front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

- All escrow analyses conducted on this account from the inception of this account until the date of this letter.

- A copy of the front and back of each and every canceled check, draft, or debit notice issued for payment of closing costs, fees and expenses listed on all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

- A copy, front and back, of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

- A copy of all letters, statements and documents sent to me by your company.

RESPA REQUEST                    Page 5 of 14

Case 2:10-cv-00029-KJD-RJJ   Document 53   Filed 12/16/10   Page 42 of 50
Case 2:10-cv-00029-KJD-RJJ   Document 40-1   Filed 05/07/10   Page 7 of 15

Case 2:10-cv-00029-KJD-RJJ   Document 22-2   Filed 03/15/10   Page 8 of 22
Certified Mail # 7007 3020 0000 3524 3301

- A copy of all letters, statements and documents sent to me by agents, attorneys, or representatives of your company.

- A copy of all letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file, or in your control, or possession, or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

- A copy of all letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to present date.

- A copy of all electronic transfers, assignments, sales of the note/asset, mortgage, deed of trust or other security instrument.

- A copy of all copies of property inspection reports, appraisals, BPOs and reports done on the property.

- A copy of all invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense, which has been charged to this mortgage account from the inception of this account to the present date.

- A copy of all checks used to pay invoices for each charged such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

- A copy of all agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

- A copy of all account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account until present date.

- A copy of all account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the from the inception of this account until present date.

## ACCOUNT ACCOUNTING & SERVICING SYSTEMS

- Please identify each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that my experts can decipher the data provided.

- For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company or party that designed and sold the system.

- For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that this account can be adequately audited.

RESPA REQUEST                    Page 6 of 14

Case 2:10-cv-00029-KJB-RJJ   Document 53   Filed 12/16/10   Page 43 of 50
Case 2:10-cv-00029-KJD-RJJ   Document 22-2   Filed 03/15/10   Page 9 of 22
Certified Mail # 7007 3020 0000 3524 3301

**DEBITS & CREDITS**

- In a spreadsheet form, or in letter form in a columnar format, please detail each and every credit on this account, and the date such credit was posted to this account, as well as the date any credit was received.

- In a spreadsheet form, or in letterform in a columnar format, please detail each debit on this account, and the date debit was posted to this account, as well as the date any debit was received.

- For each debit or credit listed, please provide the definition for each corresponding transaction code you utilize.

- For each transaction code, please provide me with the master transaction code list used by you or previous servicers.

**MORTGAGE & ASSIGNMENTS**

- A "yes or no" question: has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt, been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date?

- If not, why?

- A "yes or no" question: is your company, the servicers of this mortgage account, the holder in due course and beneficial owner of this mortgage, monetary instrument, and/or deed of trust?

- A "yes or no" question: have any sales, transfers, or assignments of this mortgage, monetary instrument, deed of trust, or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date?

- If yes, please detail for me the names of each seller, purchaser, assignor, assignee, or any holder in due course to any right or obligation of the note, mortgage, deed or security instrument that was executed, securing the obligation on this account that was not recorded in the county records where my property is located, whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

**ATTORNEY FEES.** For purposes of my questions below dealing with attorney fees, please consider the terms "attorney fees" and "legal fees" synonymously.

- A "yes or no" question: have attorney fees ever been assessed to this account from the inception of this account to the present date?

- If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date, and the date of such assessment to this account.

RESPA REQUEST                   Page 7 of 14

Case 2:10-cv-00029-KJD-RJJ Document 53 Filed 12/16/10 Page 44 of 50
Case 2:10-cv-00029-KJD-RJJ Document 40-1 Filed 05/07/10 Page 9 of 15

Case 2:10-cv-00029-KJD-RJJ Document 22-2 Filed 03/15/10 Page 10 of 22
Certified Mail # 7007 3020 0000 3524 3301

- A "yes or no" question: have attorney fees ever been charged to this account from the inception of this account to the present date?

- If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such charge to this account.

- A "yes or no" question: have attorney fees ever been collected from this account from the inception of this account to the present date?

- If yes, please detail each separate collection of attorney fees from this account from the inception of this account to the present date and the date of such collection from this account.

- Please provide the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

- Please identify the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed, authorizing the assessment, charge or collection of attorney fees.

- Please detail each separate attorney fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to present date.

- Please detail each separate attorney fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to present date.

- Please detail any adjustments in attorney fees assessed and on what date such adjustment was made and the reasons for such adjustment.

- Please detail any adjustments in attorney fees collected and on what date such adjustment were made and the reasons for such adjustment.

- A "yes or no" question: has interest been charged on any attorney fee assessed or charged to this account?

- A "yes or no" question: is interest allowed to be assessed or charged on attorney fees charged or assessed to this account?

- How much in total attorney fees have been assessed to this account from the inception of this account until present date?

- How much in total attorney fees have been collected on this account from the inception of this account until present date?

- How much in total attorney fees have been charged to this account from the inception of this account until present date?

- Please provide copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that been assessed or collected from this account.


RESPA REQUEST                    Page 8 of 14

Certified Mail # 7007 3020 0000 3524 3301

**SUSPENSE/UNAPPLIED ACCOUNTS.** For purposes of this section, please treat the term "suspense account" and "unapplied account" synonymously.

- A "yes or no" question: has there been any suspense or unapplied account transactions on this account from the inception of this account until present date?

- If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, skip the questions in this section dealing with suspense and unapplied accounts.

- In a spreadsheet, or in letter form in a columnar format, please detail each suspense or unapplied transaction, both debits and credits, that occurred on this account from the inception of this account until present date.

**LATE FEES.** For purposes of my questions below dealing with late fees, please consider the terms "late fees" and "late charges" to be one in the same.

- A "yes or no" question: have you reported the collection of late fees on this account as interest in any statement to me or to the IRS?

- A "yes or no" question: have any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS?

- A "yes or no" question: do you consider the payment of late fees as liquidated damages to you for not receiving payment on time?

- A "yes or no" question: are late fees considered interest?

- Please detail what expenses and damages you incurred for any late payment I made.

- A "yes or no" question: were any of these expenses or damages charged or assessed to this account in any other way?

- If yes, please describe what expenses or charges were charged or assessed to this account.

- Please describe what expenses you or others undertook due to any late payment I made.

- Please describe what damages you or others sustained due to any late payment I made.

- Please identify the provision, paragraph, section, or sentence of the note, mortgage, deed of trust, or agreement I signed that authorized the assessment or collection of late fees.

- Please detail each separate late fee assessed to this account, and for which corresponding payment period or month such late fee was assessed, from the inception of this account to present date.

- Please detail each separate late fee collected from this account, and for which corresponding payment period or month such late fee was collected, from the inception of this account to present date.

- Please detail any adjustments in late fees assessed, and on what date such adjustment was made, and the reasons for such adjustment.

RESPA REQUEST                    Page 9 of 14

Case 2:10-cv-00029-KJD-RJJ Document 53 Filed 12/16/10 Page 46 of 50
Case 2:10-cv-00029-KJD-RJJ Document 40-1 Filed 05/07/10 Page 11 of 15

Case 2:10-cv-00029-KJD-RJJ Document 22-2 Filed 03/15/10 Page 12 of 22
Certified Mail # 7007 3020 0000 3524 3301

- A "yes or no" question: has interest been charged on any late fee assessed or charged to this account?

- A "yes or no" question: is interest allowed to be assessed or charged on late fees charged or assessed to this account?

- A "yes or no" question: have any late charges been assessed to this account?

- If yes, how much in total late charges have been assessed to this account from the inception of this account until present date?

- Please cite the exact months or payment dates you, or other previous servicers of this account, claim any late payments have been made from the inception of this account to the present date.

- A "yes or no" question: have late charges been collected on this account from the inception of this account until present date?

- If yes, how much in total late charges have been collected on this account from the inception of this account until present date?

**SERVICING RELATED QUESTIONS.** For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this mortgage account from its inception to the present date. Accordingly, can you please provide me, in writing, the answers to the questions listed below:

- A "yes or no" question: did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

- A "yes or no" question: did the originator of this account, or previous servicers of this account, have a warehouse account agreement or contract with your company?

- A "yes or no" question: did the originator of this account, or previous servicers of this account, receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating, or administering this alleged loan?

- If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate, or other financial consideration paid to the originator of this account by your company or any affiliate.

- Please identify where the originals of this entire account file are currently located and how they are being stored, kept, and protected?

- A "yes or no" question: do you know the exact location of the original signed monetary instrument, or mortgage?

- If yes, please describe its physical location and anyone holding this note as a custodian or trustee, if applicable.

RESPA REQUEST               Page 10 of 14

Certified Mail # 7007 3020 0000 3524 3301

- If no, then answer this "yes or no" question: upon demand, would you able to certify that you have the ability to produce absolute firsthand evidence, in the form of the original signed copy of the note signed with blue ink, that you, or the entity that appointed you, are holder in due course of this alleged debt and or security regarding account # 1880539539?

- A "yes or no" question: since the inception of this alleged loan, has there been any assignment of the monetary instrument/asset to any other party?

- If yes, identify *the names & addresses of each individual, party, bank, trust or entity that has received such assignment.*

- A "yes or no" question: since the inception of this alleged loan, has there been any assignment of the deed of trust, or mortgage and note, to any other party?

- If yes, please identify the names & addresses of each individual, party, bank, trust or entity that has received such assignment.

- A "yes or no" question: since the inception of this alleged loan, has there been any sale or assignment of servicing rights to this mortgage account to any other party?

- If yes, please identify the names & addresses of each and every individual, party, bank, trust or entity that has received such assignment or sale.

- A "yes or no" question: since the inception of this alleged loan, have any sub-servicers serviced any portion of this alleged loan?

- If yes, please identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this alleged loan.

- A "yes or no" question: has this mortgage account been made a part of any mortgage pool since the inception of this alleged loan?

- If yes, please identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

- Has each assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

- A "yes or no" question: has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program?

- If yes, please identify the name and address of each individual, entity, party, bank, trust or organization or servicers that has been assigned the mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this alleged loan.

- A "yes or no" question: have there been any investors (as defined in your industry) who have participated in any mortgage-backed security, collateral mortgage obligation, or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this mortgage to the present date?

RESPA REQUEST                    Page 11 of 14

Case 2:10-cv-00029-KJD-RJJ   Document 22-2   Filed 03/15/10   Page 14 of 22

Certified Mail # 7007 3020 0000 3524 3301

- If yes, please identify the name and address of each and every individual, entity, organization and/or trust.

- Please identify the parties to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from its inception to the current date written above, and include their mailing addresses.

- Please provide copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements, and any agreement related to this account from its inception to the current date.

- How much was paid by you for this individual mortgage account?

- If part of a mortgage pool, what was the principal balance used by you to determine payment for this alleged loan?

- If part of a mortgage pool, of the principal balance above, what was the percentage paid by you used to determine the purchase price of this alleged loan?

- Who did you issue a check or payment to for this alleged loan?

- Please provide me copies with the front and back of the canceled check.

Please provide the requested documents and a detailed answer to each of the above-stated questions, within the required lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to further document requests.

Copies of this qualified written request, validation of debt, RESPA/TILA and request for accounting and legal records, dispute of debt letter will be sent to the FTC, HUD, Thrift Supervision, all relevant state and federal regulators; and other consumer advocates.

RESPA REQUEST                    Page 12 of 14

Certified Mail # 7007 3020 0000 3524 3301

**Default Provision(s) under this QUALIFIED WRITTEN RESPA REQUEST.**
**CHASE HOME FINANCE's or** any agents, transfers, or assigns' omissions of, or agreement by their silence of this RESPA REQUEST, via certified rebuttal, of all points, questions, & requests herein, denotes **agreement and consent to those points, and the premise of those questions & requests.** The potential consequences of this are several and include, but are not limited by, an immediate *termination/removal* of all right, title, and interests (liens) in JOSEPH A. GUERRA's property or collateral connected to JOSEPH A. GUERRA or account # 1880539539. **Under such conditions,** CHASE HOME FINANCE waives all immunities and defenses in claims and or violations agreed to in this RESPA REQUEST, including, but not limited by, all of the following:

- ✓ Acting as Trustor/Grantor of the Deed of Trust, JOSEPH A. GUERRA's right, to execute a revocation and rescinding of power of attorney and/or other appointment(s) CHASE HOME FINANCE may have, or may have had, in connection with account # 1880539539, and any property and/or real estate connected with account # 1880539539.

- ✓ JOSEPH A. GUERRA's right to send notices of removal and revocation to all alleged lenders, trustees, and beneficiaries, and to proceed accordingly.

- ✓ JOSEPH A. GUERRA's right to prepare a new Deed of Trust and reconveyance documents that accurately reflect CHASE HOME FINANCE's default and the satisfaction of the obligation.

- ✓ JOSEPH A. GUERRA's right of collection, via CHASE HOME FINANCE's liability insurance and/or bond.

- ✓ JOSEPH A. GUERRA's right to damages, because of CHASE HOME FINANCE's wrongful registration, breach of intermediary responsibility with regard to JOSEPH A. GUERRA's asset, by CHASE HOME FINANCE issuing to JOSEPH A. GUERRA a certified check for the original value of JOSEPH A. GUERRA's monetary instrument.

- ✓ JOSEPH A. GUERRA's right to have account # 1880539539 completely set off because of CHASE HOME FINANCE's wrongful registration, breach of intermediary responsibility with regard to JOSEPH A. GUERRA's monetary instrument/asset, by CHASE HOME FINANCE sending confirmation of set off of wrongful liability of JOSEPH A. GUERRA and issuing a certified check for the difference between the original value of JOSEPH A. GUERRA's monetary instrument/asset and what JOSEPH A. GUERRA mistakenly sent to CHASE HOME FINANCE as payment for such wrongful liability.

Case 2:10-cv-00029-KJD-RJJ   Document 53   Filed 12/16/10   Page 50 of 50
Case 2:10-cv-00029-KJD-RJJ   Document 40-1   Filed 05/07/10   Page 15 of 15
Case 2:10-cv-00029-KJD-RJJ   Document 22-2   Filed 03/15/10   Page 16 of 22

Case Certified Mail # 7007 3020 0000 3524 3303

CHASE HOME FINANCE or any transfers, agents, or assigns who offer a rebuttal of this letter AND the attached Exhibit "A", must do so in the manner of this "RESPA REQUEST", in accordance with, and in compliance with, current statutes and/or laws, by signing in the capacity of a fully liable man or woman being responsible and liable under penalty of perjury, while offering direct testimony with the official capacity as an appointed agent for CHASE HOME FINANCE in accordance with CHASE HOME FINANCE's Articles of Incorporation and By Laws, duly signed by a current and duly sworn under oath director(s) of such corporation/holding corporation/national association.

Any direct rebuttal with certified true and complete accompanying proof must be posted within sixty business days. If and when no verified rebuttal of this "RESPA REQUEST" is made in a timely manner, a "Certificate of Non-Response" serves as CHASE HOME FINANCE's judgment and consent/agreement with all claims and/or violations herein-stated in the default provisions, or any other law.

Sincerely,

JOSEPH A. GUERRA

CC:

Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20580

Office of Housing Enterprise Oversight (OFHEO)
1700 G Street NW, Fourth Floor
Washington, DC 20552

Office of RESPA and Interstate Land Sales
Office of Housing, Room 9146
Department of Housing and Urban Development
451 Seventh Street SW
Washington, DC 20410

RESPA REQUEST                    Page 14 of 14