1
2
3

Joseph A. Guerra
8938 W. Katie Ave.
Las Vegas, NV 89147
Tel:702-243-3427
Plaintiff in Pro Per

2012 OCT 26  P I: 20

4

# DISTRICT COURT OF THE UNITED STATES
# DISTRICT COURT OF NEVADA

5

6  Joseph A. Guerra,

7          Plaintiff,

8      vs.

9  JUST MORTGAGE, INC.; CHASE HOME
10 FINANCE, LLC; MERS and
   DOES 1-10,
11
          Defendants.
12

Case No.:2:10-cv-00029-KJD-RJJ

**PLAINTIFF'S MOTION FOR
REQUESTS FOR JUDICIAL
NOTICE-FRE 201(d)**

13
14         Please note on FRE 201(d) provides "A court shall take

15  judicial notice if requested by a party and supplied with

16  necessary information." And, FRE 201(f) provides "Judicial

17  notice may be taken at any stage of the proceeding."

18                        **FIRST REQUEST**

19         I provide the Nevada Supreme Court's landmark foreclosure

20  decisions of July 2011, which I cited in my recent motion for

21  amended complaint, Pasillas v. Defendant Bank USA, 127 Nev.

22
23  Defendant_, 255 P.3d 1281 (2011), and Leyva v. National Default

24  Servicing Corp., 127 Nev._, 255 P.3d 1275 (2011).

25         Because I assume you are all legal professionals that you

26  are, not me, you should all be familiar with these cases and

27
28  their binding effect on these proceedings. As a courtesy and for

- 1

everyone's convenience **I have printed and attached** the actual decisions taken from our Supreme Court's website.(See Exhibit 1)

### SECOND REQUEST

Our Supreme Court recently issued its decision in Edelstein v. BONY. Anyone can still access it online @

http://www.nevadajudiciary.us/images/advanceopinions/128nevadvopno48.pdf

For everyone's convenience **I have printed and attached** it also. This case is relevant because MERS is a party here. (see Exhibit 2)

### THIRD REQUEST

I provide here the recent deposition of Lawrence Nardi, the operations unit manager and a mortgage officer for JP Morgan Chase Bank, N.A., who was previously with WaMu and was picked up by JPM after WaMu's failure. The 330 page deposition was taken by counsel for the homeowner on May 09, 2012, in the matter of JP Morgan Chase Bank, N.A. as successor in interest to Washington Mutual Bank v. Waisome, Florida 5th Judicial Circuit Case No.:2009-CA-005717. Rather than burden this court by printing the entire 330-page deposition, I have provided the internet link where all can see it, review and download it @

http://www.stellionata.com/in-the-news/38-headlines/7662-120509
-jpmc-v-waisome-lawrence-nardi-deposition

- 2

I understand and expect Defendants to challenge its admissibility. So, on request I will contact the court reporter shown for a certified/authenticated copy of the full transcript.

The instant relevance of this deposition is this: Mr. Nardi confirmed under oath and in print there is no schedule of mortgage loans evidencing what JPM allegedly "purchased" from the FDIC in connection with the failure of WaMu. Specifically, with my own emphasis here in boldface:

"Q:Okay. The - **are you aware of any type of schedule of loans that would have been created to represent the - either the loans that were asset loans or the loans that were serviced by WAMU?** Are you - was the - do you know if there is a schedule or database of loans like that?"[1]

"A:**I know that there was a schedule contemplated in certain documents related to the purchase. That schedule has never materialized in any form. We've never been able to produce it in any previous cases.** It would certainly be a wonderful thing to have, but it's - as far as I know, it doesn't exist, although it was - it was contemplated in the documents."[1]

"Q:Have you ever in your duties of being a loan analyst - a loan operations specialist, **have you ever seen an FDIC bill of sale or a receiver's deed or an assignment of mortgage or an allonge?**

- 3

"A: For loans, I'm assuming you're talking about the WaMu loan that was subject to the purchase here."[3]

**"A: No, there is no assignments of mortgage. There's no allonges. There's no – in the thousands of loans that I have come into contact with that were a part of this purchase, I've never once seen an assignment of mortgage. There is simply not – they don't exist. Or allonges or anything transferring ownership from WAMU to Chase, in other words.** Specifically, endorsements and things like that."[4]

I expect to brief the court on each of these Notices as needed in these proceedings.

---

**FOOTNOTES**

1 page 57, beginning at line 19

2 page 58, beginning at line 1

3 beginning at page 260, line 18; Answer starts at line 23

4 page 261, beginning at line 2

---

I expressly reserve the right to amend or supplement this Request if I believe it is needed. I also reserve the right to have the court construe this paper according to FRCP 1001 and 7008(a) by its inclusion of FRCP 8(e).

Respectfully submitted                          October 26, 2012

_____                  _____
Joseph A. Guerra, UCC 1-308                          Date
Plaintiff in Pro Per

- 4

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2012, I mailed a copy of this **PLAINTIFF'S MOTION FOR REQUESTS FOR JUDICIAL NOTICE (FIRST) – FRE 201(d)** to the following parties by First Class Mail:

James E. Murphy, Esq.
6720 Via Austi Parkway, Suite 430
Las Vegas, Nevada 89119

Katie M. Weber, Esq.
Smith Larson & Wixom
Hill Center Business Park
1935 Village Center Cr.
Las Vegas, NV  89134

M. Stephen Cho, Esq.
CHO SHEASBY CHUNG & IGNACIO, LLP
1035 Foothill Blvd., Suite 460
Ranco Cucamonga, CA 91730

/s/ Beata Hu
Beata Hu

# EXHIBIT 1

127 Nev., Advance Opinion 40

IN THE SUPREME COURT OF THE STATE OF NEVADA

MOISES LEYVA,
Appellant,
    vs.
NATIONAL DEFAULT SERVICING
CORP.; AMERICA'S SERVICING
COMPANY; AND WELLS FARGO,
Respondents.

No. 55216

**FILED**

JUL 07 2011

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in a foreclosure mediation action. Eighth Judicial District Court, Clark County; Donald M. Mosley, Judge.

<u>Reversed and remanded.</u>

Crosby & Associates and David M. Crosby and Troy S. Fox, Las Vegas, for Appellant.

Snell & Wilmer, LLP, and Gregory A. Brower and Cynthia Lynn Alexander, Las Vegas, for Respondents America's Servicing Company and Wells Fargo.

Wilde & Associates and Gregory L. Wilde, Las Vegas, for Respondent National Default Servicing Corp.

BEFORE THE COURT EN BANC.

OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider issues arising out of Nevada's Foreclosure Mediation Program. First, we must determine whether a homeowner who is not the original mortgagor is a proper party to participate in the program. We conclude that the Foreclosure Mediation statute, NRS 107.086, and the Foreclosure Mediation Rules (FMRs)

*11-20175*

dictate that a homeowner, even if he or she is not the named mortgagor, is a proper party entitled to request mediation following a notice of default.

Second, we must determine if a party is considered to have complied with the applicable statute and FMRs governing document production in a mediation proceeding by producing what the district court referred to as "essential documents." In this, we address whether substantial compliance satisfies the mandates of the statute and FMRs. Because we conclude that strict compliance is compelled by NRS 107.086(4) and (5), that the assignment offered was defective, and that no endorsement of the mortgage note was provided according to Article 3 of the Uniform Commercial Code, we conclude that Wells Fargo failed to produce the documents required under NRS 107.086(4). Additionally, we recently concluded in Pasillas v. HSBC Bank USA, 127 Nev. ___, ___ P.3d ___ (Adv. Op. No. 39, July 7, 2011), that a party's failure to produce the enumerated documents required by NRS 107.086 and the FMRs prohibits the district court from directing the program administrator to certify the mediation so that the foreclosure process can proceed. Here, we again conclude that, due to the statute's and the FMRs' mandatory language regarding document production, a party is considered to have fully complied with the statute and rules only upon production of all documents required. Failure to do so is a sanctionable offense, and the district court is prohibited from allowing the foreclosure process to proceed. Therefore, we must reverse and remand this case to the district court for it to determine appropriate sanctions against respondents.[1]

---

[1]Because we reverse on other grounds, we do not reach Leyva's contention that respondent Wells Fargo also participated in the mediation
*continued on next page . . .*

## FACTS AND PROCEDURAL HISTORY

Appellant Moises Leyva received and recorded a quitclaim deed in 2007 in exchange for taking over monthly mortgage payments on a residence in Las Vegas. Leyva did not expressly assume the mortgage note, however, and it remained in the original mortgagor's name, Michael Curtis Ramos. Nonetheless, Leyva made the mortgage payments in Leyva's name to respondent Wells Fargo's servicing company for 25 months. Thereafter, Leyva defaulted on the mortgage and, upon receiving a notice of election to sell, decided to pursue mediation through the Foreclosure Mediation Program. Both he and Ramos signed the form electing to mediate. The mediation occurred on September 23, 2009,[2] and Leyva, Ramos, and Wells Fargo were represented by counsel at the mediation. Leyva was present at the mediation, while Ramos was available by telephone. At the mediation, Wells Fargo produced a certified copy of the original deed of trust and mortgage note, on both of which

-------------------

*. . . continued*

in bad faith because it refused to offer anything other than a cash-for-keys option to avoiding foreclosure.

[2]Therefore, this mediation was governed by the Foreclosure Mediation Rules in effect from July 31, 2009, until September 28, 2009, at which time the rules were amended. See In the Matter of the Adoption of Rules for Foreclosure Mediation, ADKT 435 (Order Adopting Foreclosure Mediation Rules, June 30, 2009, and Order Amending Foreclosure Mediation Rules and Adopting Forms, September 28, 2009). Although the changes required some renumbering of the rules, the language of the rules important to this case, namely, those specifying who can participate in the mediation and the documents that must be provided, remain essentially the same.

MortgageIT, Inc., not Wells Fargo, was named as the lender, as well as a notarized statement from a Wells Fargo employee asserting that Wells Fargo was in possession of the deed of trust and mortgage note, as well as any assignments thereto.   Wells Fargo did not submit copies of any assignments.   The parties failed to resolve the foreclosure at the mediation, and the mediator's statement indicated that Wells Fargo failed to bring the statutorily required documents to the mediation.   The mediator did not, however, indicate that Wells Fargo participated in the mediation in bad faith.

Leyva then filed a petition for judicial review in district court, claiming that Wells Fargo mediated in bad faith and that it should be sanctioned.   After conducting hearings on the petition, the district court found that

> there is a lack of showing of bad faith on the part of [Wells Fargo] in that all essential documents were provided, contrary to the indication of the mediator, and that [Wells Fargo] otherwise negotiated in good faith notwithstanding the fact that an agreement was not reached.
>
> Absent timely appeal, a Letter of Certification shall enter.

(Emphasis added.)  This appeal followed.[3]

## DISCUSSION

In resolving this appeal, as a preliminary matter, we must determine whether Leyva could properly elect to mediate and participate

---

[3]This court has jurisdiction over the appeal from the district court's final order in the judicial review proceeding.  Nev. Const. art. 6, § 4; NRAP 3A(b)(1).

in the mediation even though he was not a named party on the mortgage note and did not assume the note in his purchase of the residence. Determining that he could participate as the title holder of record, we next consider whether the district court erred in finding that Wells Fargo brought "all <u>essential</u> documents" to the mediation. In doing so, we address Wells Fargo's argument that possessing the original mortgage note and deed of trust is sufficient to demonstrate ownership of the same. We conclude that Wells Fargo failed to produce the documents required under the applicable statute and FMRs and to otherwise show that it had an enforceable interest in the property subject of the mediation. Accordingly, the district court abused its discretion, and sanctions are warranted pursuant to our holding in <u>Pasillas</u>, 127 Nev. at ___, ___ P.3d at ___.

<u>Leyva was a proper party to the mediation</u>

Wells Fargo first argues that because Leyva was neither the grantor on the deed of trust nor the obligor on the note, he was not a proper party to the mediation. We disagree.

NRS 107.086(3) allows "[t]he grantor <u>or</u> the person who holds the title of record" to elect to mediate. (Emphasis added.) Similarly, FMR 5(1) states that "any grantor <u>or</u> person who holds the title of record and is the owner-occupant of a residence" is eligible to participate in the Foreclosure Mediation Program. (Emphasis added.) Leyva recorded his ownership of the subject property in March 2007 and is therefore clearly the title holder of record eligible to participate in the Foreclosure Mediation Program.

Even though the mortgage note remained in Ramos's name, this bifurcation of title ownership and liability on the note served only to potentially limit the foreclosure solutions available to Leyva at the

mediation, not to exclude all possible remedies. And while Wells Fargo argues that modification was not an option because Leyva lacked authority over the loan, the record reflects that Ramos, the person with such authority, signed the election-of-mediation form, was represented by counsel at the mediation, and was available by telephone during the mediation. Therefore, Wells Fargo's argument lacks merit. Regardless, because both NRS 107.086(3) and FMR 5(1) permit the person holding the title of record to mediate, and Wells Fargo does not dispute that Leyva possessed a valid, recorded quitclaim deed, we conclude that Leyva could properly elect to mediate and was eligible to participate in the Foreclosure Mediation Program.

<u>Wells Fargo failed to meet the mediation program's documentation requirements, compelling consideration of sanctions</u>

In <u>Pasillas</u>, we held that if a party fails to (1) provide the required documents, or (2) either attend the mediation in person or, if the beneficiary attends through a representative, that person fails to have authority to modify the loan or access to such a person, the district court is required to impose appropriate sanctions. 127 Nev. at ___, ___ P.3d at ___. Here, despite Wells Fargo's failure to bring the assignments for the mortgage note and deed of trust, the district court refused to impose sanctions.[4]   "[W]e . . . review a district court's decision regarding the imposition of sanctions for a party's participation in the Foreclosure Mediation Program under an abuse of discretion standard." <u>Id.</u>

---

[4]At the time the district court entered its order, the <u>Pasillas</u> opinion had not been published.

Wells Fargo concedes that it did not provide written assignments of the deed of trust and mortgage note as required by NRS 107.086(4) and FMR 5(6). Nevertheless, it argues that it fulfilled the purpose of the statute and rule, and thus, its failure to bring actual copies of any assignments was harmless. In essence, Wells Fargo asserts that its failure to strictly comply with the statute's and FMRs' requirements should not subject it to sanctions, because it substantially complied with those requirements.

"Substantial compliance may be sufficient 'to avoid harsh, unfair or absurd consequences.' Under certain procedural statutes and rules, however, failure to strictly comply . . . can be fatal to a case." Leven v. Frey, 123 Nev. 399, 407, 168 P.3d 712, 717 (2007) (quoting 3 Norman J. Singer, Statutes and Statutory Construction § 57:19, at 58 (6th ed. 2001)). To determine whether a statute and rule require strict compliance or substantial compliance, this court looks at the language used and policy and equity considerations. Id. at 406-07, 168 P.3d at 717. In so doing, we examine whether the purpose of the statute or rule can be adequately served in a manner other than by technical compliance with the statutory or rule language. See id. at 407 n.27, 168 P.3d at 717 n.27 (citing White v. Prince George's County, 877 A.2d 1129, 1137 (Md. Ct. Spec. App. 2005) ("Where the purpose of the notice requirements is fulfilled, but not necessarily in a manner technically compliant with all of the terms of the statute, this Court has found such substantial compliance to satisfy the statute." (internal quotation omitted))).

Here, both the statutory language and that of the FMRs provide that the beneficiary "shall" bring the enumerated documents, and we have previously recognized that "'shall' is mandatory unless the statute

demands a different construction to carry out the clear intent of the legislature." <u>S.N.E.A. v. Daines</u>, 108 Nev. 15, 19, 824 P.2d 276, 278 (1992); <u>see also</u> <u>Pasillas</u>, 127 Nev. at ___, ___ P.3d at ___. The legislative intent behind requiring a party to produce the assignments of the deed of trust and mortgage note is to ensure that whoever is foreclosing "actually owns the note" and has authority to modify the loan. <u>See</u> Hearing on A.B. 149 Before the Joint Comm. on Commerce and Labor, 75th Leg. (Nev., February 11, 2009) (testimony of Assemblywoman Barbara Buckley). Thus, we determine that NRS 107.086 and the FMRs necessitate strict compliance.

Because we conclude that strict compliance is necessary, we must discuss what constitutes a valid assignment of deeds of trust and mortgage notes. Transfers of deeds of trust and mortgage notes are distinctly separate, thus we discuss each one in turn.

<u>The deed of trust, with any assignments, identifies the person who is foreclosing</u>

In this case, Wells Fargo was not the original named beneficiary on the deed of trust, but it contends on appeal that it has the right to foreclose as the assignee of the original beneficiary, MortgageIT. Although Wells Fargo conceded during oral argument that it did not provide the written assignment, it claims that because it provided a certified copy of the deed of trust and a notarized statement from its employee claiming that it was the rightful owner of the deed of trust, no written assignment was necessary. We disagree.

A deed of trust is an instrument that "secure[s] the performance of an obligation or the payment of any debt." NRS 107.020.

This court has previously held that a deed of trust "constitutes a conveyance of land as defined by NRS 111.010."[5] Ray v. Hawkins, 76 Nev. 164, 166, 350 P.2d 998, 999 (1960). The statute of frauds governs when a conveyance creates or assigns an interest in land:

> No estate or interest in lands, . . . nor any trust or power over or concerning lands, or in any manner relating thereto, shall be created, granted, <u>assigned</u>, surrendered or declared . . . , unless . . . by deed or conveyance, in writing, subscribed by the party creating, granting, <u>assigning</u>, surrendering or declaring the same, or by the party's lawful agent thereunto authorized in writing.

NRS 111.205(1) (emphases added). Thus, to prove that MortgageIT properly assigned its interest in land via the deed of trust to Wells Fargo, Wells Fargo needed to provide a signed writing from MortgageIT demonstrating that transfer of interest. No such assignment was provided at the mediation or to the district court, and the statement from Wells Fargo itself is insufficient proof of assignment. Absent a proper assignment of a deed of trust, Wells Fargo lacks standing to pursue foreclosure proceedings against Leyva.

Mortgage note

The proper method of transferring the right to payment under a mortgage note is governed by Article 3 of the Uniform Commercial Code—Negotiable Instruments, because a mortgage note is a negotiable

---

[5] "'Conveyance' shall be construed to embrace every instrument in writing, except a last will and testament, whatever may be its form, and by whatever name it may be known in law, by which any estate or interest in lands is created, aliened, assigned or surrendered." NRS 111.010(1).

instrument.[6]  Birkland v. Silver State Financial Services, Inc., No. 2:10-CV-00035-KJD-LRL, 2010 WL 3419372, at *4 (D. Nev. Aug. 25, 2010). The obligor on the note has the right to know the identity of the entity that is "entitled to enforce" the mortgage note under Article 3, see NRS 104.3301, "[o]therwise, the [homeowner] may pay funds to a stranger in the case." In re Veal, No. 09-14808, 2011 WL 2304200, at *16 (B.A.P. 9th Cir. June 10, 2011) (holding, in a bankruptcy case, that AHMSI did not prove that it was the party entitled to enforce, and receive payments from, a mortgage note because it "presented no evidence as to who possessed the original Note. It also presented no evidence showing [e]ndorsement of the note either in its favor or in favor of Wells Fargo, for whom AHMSI allegedly was servicing the [bankrupt party's] Loan."). If the homeowner pays funds to a "stranger in the case," then his or her obligation on the note would not be reduced by the payments made. See id. at *7 ("if a[n obligor on a mortgage note] makes a payment to a 'person entitled to enforce,' the obligation is satisfied on a dollar for dollar basis, and the [obligor] never has to pay that amount again").

Wells Fargo argues that, under Nevada law, possession of the original note allowed it to enforce the note. We disagree and take this opportunity to clarify the applicability of Article 3 to mortgage notes, as we anticipate increasing participation in the Foreclosure Mediation Program, as well as a corresponding increase in the number of foreclosure appeals in this state. As discussed below, we conclude that Article 3 clearly requires Wells Fargo to demonstrate more than mere possession of

---

[6]Article 3 is codified in NRS 104.3101-.3605.

the original note to be able to enforce a negotiable instrument under the facts of this case.

Pursuant to NRS 104.3102(1), Article 3 applies to negotiable instruments.  Negotiable instruments are defined as

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (a) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (b) Is payable on demand or at a definite time; and
>
> (c) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money.

NRS 104.3104(1).  Thus, a mortgage note is a negotiable instrument, and any negotiation of a mortgage note must be done in accordance with Article 3.

A note can be made payable to bearer or payable to order. NRS 104.3109.  If the note is payable to bearer, that "indicates that the person in possession of the promise or order is entitled to payment."  NRS 104.3109(1)(a).  However, "[a] promise or order that is not payable to bearer is payable to order if it is payable to the order of an identified person . . . . A promise or order that is payable to order is payable to the identified person."  NRS 104.3109(2).

For a note in order form to be enforceable by a party other than to whom the note is originally payable, the note must be either

negotiated or transferred.[7]   A "'[n]egotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." NRS 104.3201(1).  "[I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder."[8]   NRS 104.3201(2) (emphasis added).  An "endorsement" is a signature that is "made on an instrument for the purpose of negotiating the instrument."  NRS 104.3204(1).  Thus, if the note is payable to the order of an identifiable party, but is then sold or otherwise assigned to a new party, it must be endorsed by the party to whom it was originally payable for the note to be considered properly negotiated to the new party.  Once a proper negotiation occurs, the new party, or "note holder," with possession is entitled to enforce the note. NRS 104.1201(2)(u)(1) ("Holder means . . . [t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession.").

If a party cannot attain "holder" status by showing a valid negotiation, the party may establish its right to enforce the note by showing that the note has been validly transferred.  NRS 104.3203(2). The only distinction between a negotiation and a transfer is that, in the

---

[7]Since the documents provided at the mediation did not establish transfer of either the mortgage or the note, we express no opinion on the issue addressed in the Restatement (Third) of Property section 5.4 concerning the effect on the mortgage of the note having been transferred or the reverse.

[8]Under NRS 104.3301(1)(a), a person entitled to enforce an instrument is "[t]he holder of the instrument."

case of a transfer, the note need not be endorsed by the party who is relinquishing enforcement rights. Because a transferred note is not endorsed, however, the party seeking to establish its right to enforce the note "must account for possession of the unendorsed instrument by proving the transaction through which the transferee acquired it." U.C.C. § 3-203 cmt. 2 (explaining the effect of § 3-203(b), codified in Nevada as NRS 104.3203(2)). In other words, because the party seeking to enforce the note cannot "prove" its right to enforce through the use of a valid endorsement, the party must "prove" by some other means that it was given possession of the note for the purpose of enforcing it.[9]

In this case, the adjustable rate mortgage note provides: "In return for a loan that I have received, I promise to pay U.S. $192,000.00 . . . plus interest, to the order of Lender. Lender is [MortgageIT, Inc.]" (emphasis added). Because the mortgage note is payable to the order of a specific party, MortgageIT, to negotiate the note to a new party, in this case Wells Fargo, Wells Fargo must have possession of the note and the note must be properly endorsed by MortgageIT. See NRS 104.3201(2). No such endorsement was included in the documents produced at mediation or in the documents filed with the district court, nor was a valid assignment produced as proof of the note's transfer, and mere possession does not entitle Wells Fargo to enforce the note. Therefore, because the mortgage note is payable to MortgageIT, unless Wells Fargo can prove that the note was properly endorsed or

_____

[9]To "prove" a transaction under NRS 104.3203(2), a party must present evidence sufficient to establish that it is more likely than not that the transaction took place. NRS 104.3103(1)(i) (defining "prove"); NRS 104.1201(h) (defining "burden of establishing").

validly transferred, thereby making it the party entitled to enforce the note, it has not demonstrated authority to mediate the note.

As we concluded in <u>Pasillas</u>, a foreclosing party's failure to bring the required documents to the mediation is a sanctionable offense under NRS 107.086 and the FMRs. Therefore, we conclude that the district court abused its discretion when it denied Leyva's petition for judicial review. Accordingly, we reverse the district court's order and remand this matter to the district court with instructions to determine the appropriate sanctions for Wells Fargo's violation of the statutory and rule-based requirement. In doing so, the district court should consider the factors discussed in <u>Pasillas</u>.[10]

_____, J.
Hardesty

We concur:

_____, C.J.
Douglas

_____, J.
Saitta

_____, J.
Pickering

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Parraguirre

---

[10]In <u>Pasillas</u>, we concluded that the following nonexhaustive list of factors would aid district courts in determining what sanctions are appropriate: "whether the violations were intentional, the amount of prejudice to the nonviolating party, and the violating party's willingness to mitigate any harm by continuing meaningful negotiation." <u>Pasillas v. HSBC Bank USA</u>, 127 Nev. ___, ___, ___ P.3d ___, ___ (Adv. Op. No. 39, July 7, 2011).

127 Nev., Advance Opinion 39

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| EMILIANO PASILLAS AND YVETTE PASILLAS, <br> Appellants, <br> vs. <br> HSBC BANK USA, AS TRUSTEE FOR LUMINENT MORTGAGE TRUST; POWER DEFAULT SERVICES, TRUSTEE; AND AMERICAN HOME MORTGAGE SERVICING, INC., <br> Respondents. | No. 56393 |

**FILED**

JUL 07 2011

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review arising in a foreclosure mediation action. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

<u>Reversed and remanded.</u>

Terry J. Thomas, Reno,
for Appellants.

Pite Duncan, LLP, and Gregg A. Hubley, Laurel I. Handley, and Cuong M. Nguyen, Las Vegas,
for Respondents.

BEFORE THE COURT EN BANC.

11-20173

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider issues arising out of Nevada's Foreclosure Mediation Program and address whether a lender commits sanctionable offenses when it does not produce documents and does not have someone present at the mediation with the authority to modify the loan, as set forth in the applicable statute, NRS 107.086, and the Foreclosure Mediation Rules (FMRs).

Because NRS 107.086 and the FMRs expressly require that certain documents be produced during foreclosure mediation and that someone with authority to modify the loan must be present or accessible during the mediation, we conclude that a party's failure to comply with these requirements is an offense subject to sanctions by the district court. In such an event, the district court shall not direct the program administrator to certify the mediation to allow the foreclosure process to proceed until the parties have fully complied with the statute and rules governing foreclosure mediation.

Here, because respondents HSBC Bank USA, Power Default Services, and American Home Mortgage Servicing, Inc. (AHMSI), did not bring the required documents to the mediation and did not have access to someone authorized to modify the loan during the mediation, we conclude that the district court erred in denying appellants Emiliano and Yvette Pasillas's petition for judicial review. Therefore, we reverse the district court's order and remand this matter to the district court so that the court may determine sanctions.

<u>FACTS AND PROCEDURAL HISTORY</u>

The Pasillases purchased a home in Reno in 2006 with a loan from American Brokers Conduit. The note and deed of trust were allegedly assigned to HSBC.[1] Near the end of 2009, Power Default Services became a substitute trustee, removing HSBC from that role. Allegedly, the servicer for the Pasillases' loan is AHMSI.[2]

When the Pasillases defaulted on their mortgage and received a notice of election to sell, they elected to mediate pursuant to the Foreclosure Mediation Program provided for in NRS 107.086. Two separate mediations occurred, one on February 18, 2010, and one on March 8, 2010,[3] but neither mediation resulted in a resolution.

While a representative of AHMSI was available by phone at both mediations, it is unclear whether HSBC was present or represented by counsel. There is some disagreement between the parties regarding who the respondents' attorneys represented at the mediations and at the hearing on the petition for judicial review. In the addendum to the

---

[1]The Pasillases claim that HSBC failed to provide a valid assignment; the one it provided during the mediation was signed by American Brokers Conduit but did not state who the assignee was.

[2]The parties do not argue and we do not reach the question of whether AHMSI is a valid agent for HSBC or the real party in interest, or the "person entitled to enforce" the promissory note in this case. See <u>In re Veal</u>, No. 09-14808, 2011 WL 2304200, at *12-14 (B.A.P. 9th Cir. June 10, 2011).

[3]These mediations were governed by the Foreclosure Mediation Rules (FMRs) as amended on November 4, 2009.

mediator's statement, the mediator stated that "HSBC . . . was identified as Beneficiary . . . and represented by Cuong Nguyen, Esq. of Pite Duncan, LLP."    In    the    second    mediation,    the    mediator    indicated    that "HSBC . . . was again identified as Beneficiary . . . and represented by Heather Hudson, Esq. of Pite Duncan, LLP." However, in responding to the Pasillases' petition for judicial review, the Pite Duncan law firm indicated that it was not counsel for HSBC.  Specifically, the response opened with the following statement:  "Respondents AMERICAN HOME MORTGAGE SERVICING, INC. ('AHMSI'), erroneously named herein as HSBC BANK USA AS TRUSTEE FOR LUMINENT MORTGAGE TRUST."  Respondents also claimed that the Pasillases were "incorrect that Pite Duncan, LLP attended [the mediations] on behalf of HSBC."  At oral argument before this court, respondents' counsel stated that they represented all of the respondents named in this case at the mediations, but they did not dispute the mediator's finding that respondents needed additional authority from investors to agree to a loan modification.

      After both mediations were completed, the mediator filed a statement indicating that (1) "[t]he parties participated but were unable to agree to a loan modification or make other arrangements," (2) "[t]he beneficiary or his representative failed to participate in good faith," and (3) "[t]he beneficiary failed to bring to the mediation each document required." The mediator also filed an addendum to his statement, wherein he stated that two pages of the mortgage note were missing, that the assignment purportedly assigning the mortgage note and deed of trust to HSBC was incomplete, that instead of an appraisal HSBC provided a

broker's price opinion,[4] and that respondents stated they would need additional investor approval before agreeing to a loan modification. The mediator concluded that he would not recommend that the administrator issue a certificate authorizing further foreclosure proceedings because HSBC "failed to participate in [the] mediation in good faith as evidenced by its failure to produce required documents and information initially, or subsequently to cure its failures." The Pasillases subsequently filed a petition for judicial review in the district court. In the petition, the Pasillases requested sanctions in the form of a modification of their mortgage and attorney fees.

The district court conducted a short hearing, during which the only issue addressed was the parties' failure to come to an agreement. The district court did not address whether respondents failed to provide the required documents at the mediation or whether respondents lacked the requisite authority at the mediation to modify the loan. After the hearing, the district court entered an order finding that "Respondent[s] [have] met the burden to show cause why sanctions should not lie," and directed the Foreclosure Mediation Program administrator to issue a certification authorizing the foreclosure to proceed. The Pasillases appealed.

---

[4]We note that while FMR 11(7)(b) currently allows for a broker's price opinion in lieu of an appraisal, the rules applicable to this matter called for an appraisal without mention of a broker's price opinion. In the Matter of the Adoption of Rules for Foreclosure Mediation, ADKT 435 (Order Adopting Foreclosure Mediation Rules, June 30, 2009, and Order Amending Foreclosure Mediation Rules and Adopting Forms, November 4, 2009).

## DISCUSSION

In resolving this appeal, we must determine whether the district court abused its discretion when it refused to enter sanctions against respondents for failing to satisfy express statutory requirements and allowed respondents to continue with the foreclosure process. We begin our discussion with a brief background of the Foreclosure Mediation Program.

### The Foreclosure Mediation Program

The Nevada Legislature enacted the Foreclosure Mediation Program in 2009 in response to the increasing number of foreclosures in this state. Hearing on A.B. 149 Before the Joint Comm. on Commerce and Labor, 75th Leg. (Nev., February 11, 2009) (testimony of Assemblywoman Barbara Buckley). The program requires that a trustee seeking to foreclose on an owner-occupied residence provide an election-of-mediation form along with the notice of default and election to sell. NRS 107.086(2)(a)(3). If the homeowner elects to mediate, both the homeowner and the deed of trust beneficiary must attend, must mediate in good faith, provide certain enumerated documents,[5] and, if the beneficiary attends

---

[5]With regard to the documents required, NRS 107.086(4) provides that "[t]he beneficiary of the deed of trust shall bring to the mediation the original or a certified copy of the deed of trust, the mortgage note[,] and each assignment of the deed of trust or mortgage note." The FMRs echo this documentation requirement nearly word for word. FMR 5(7)(a). FMR 7(2) also provides that "[t]he beneficiary of the deed of trust or its representatives shall produce an appraisal . . . and shall prepare an estimate of the 'short sale' value of the residence."

through a representative, that person must have authority to modify the loan or have "access at all times during the mediation to a person with such authority." NRS 107.086(4), (5); FMR 5(7)(a). After the conclusion of the mediation, the mediator must file a mediator's statement with the program administrator, indicating whether all parties complied with the statute and rules governing the program. FMR 12(2). If the beneficiary does not (1) attend the mediation; (2) mediate in good faith; (3) provide the required documents; or (4) if attending through a representative, have a person present with authority to modify the loan or access to such a person, the mediator is required to "submit . . . a petition and recommendation concerning the imposition of sanctions."[6]   NRS 107.086(5). The homeowner may then file a petition for judicial review with the district court,[7] and the court "may issue an order imposing such sanctions against the beneficiary of the deed of trust or the representative as the court determines appropriate." See FMR 5(7)(f).[8] But if the district

─────────────

[6]If the homeowner fails to attend the mediation, the administrator will certify that no mediation is required. NRS 107.086(6).

[7]Generally, if the parties fail to reach an agreement and neither party files a petition for judicial review, the program administrator will certify the mediation, which allows the foreclosure process to proceed. NRS 107.086(3), (6), (7).

[8]The current version of the FMRs requires the district court to review a case de novo when a party files a petition for judicial review. FMR 21(5) (rules including amendments through March 1, 2011). De novo review may include an evidentiary hearing concerning what transpired at the mediation. See Black's Law Dictionary 924 (9th ed. 2009) (defining "de novo judicial review" as "[a] court's nondeferential review of an administrative decision, usu[ally] through a review of the administrative record plus any additional evidence the parties present").

court finds that the parties met the four program requirements, it will direct the program administrator to certify the mediation, allowing the foreclosure process to proceed. See NRS 107.086(2)(c)(2), (3), (6), (7).

**Respondents failed to meet the mediation program's statutory requirements**

The Pasillases argue that respondents failed to meet the program's requirements—the document requirement because respondents failed to bring a complete mortgage note and failed to provide assignments of the note and deed of trust, and the loan modification authority requirement because they failed to have someone present at the mediation with the authority to modify the loan. We agree.

The scope and meaning of a statute is a question of law, which we review de novo. Arguello v. Sunset Station, Inc., 127 Nev. ___, ___ P.3d ___ (Adv. Op. No. 29, June 2, 2011). Court rules are also subject to de novo review. Moon v. McDonald Carano Wilson LLP, 126 Nev. ___, ___, 245 P.3d 1138, 1139 (2010). "When the language in a provision is clear and unambiguous, this court gives 'effect to that meaning and will not consider outside sources beyond that statute.'" City of Reno v. Citizens for Cold Springs, 126 Nev. ___, ___, 236 P.3d 10, 16 (2010) (quoting NAIW v. Nevada Self-Insurers Association, 126 Nev. ___, ___, 225 P.3d 1265, 1271 (2010)).

Both NRS 107.086 and the FMRs use the word "shall" or "must" when listing the actions required of parties to a foreclosure mediation. Use of the word "shall" in both the statutory language and the FMRs indicates a duty on the part of the beneficiary, and this court has stated that "'shall' is mandatory unless the statute demands a different construction to carry out the clear intent of the legislature." S.N.E.A. v. Daines, 108 Nev. 15, 19, 824 P.2d 276, 278 (1992). Additionally, Black's

Law Dictionary defines "shall" as meaning "imperative or mandatory. . . . inconsistent with a concept of discretion." 1375 (6th ed. 1990). And as it is used here, "must" is a synonym of "shall." We conclude that NRS 107.086(4) and (5) and FMR 5(7)(a) clearly and unambiguously mandate that the beneficiary of the deed of trust or its representative (1) attend the mediation, (2) mediate in good faith, (3) provide the required documents, and (4) have a person present with authority to modify the loan or access to such a person.

Here, the mediator's statement and his addendum to that statement, which were provided to the district court in the Pasillases' petition for judicial review, clearly set out respondents' failure to bring the required documents to the mediation and to have someone present with authority to modify the loan. Additionally, respondents do not dispute that they failed to bring all the required documents to the mediation.[9]

---

[9]At oral argument, respondents' counsel argued that an assignment for the mortgage note was provided, but the name of the assignee was missing. We determine that an assignment provided without the name of the assignee is defective for the purposes of the Foreclosure Mediation Program because it does not identify the relevant parties.

The Supreme Judicial Court of Massachusetts recently reached the same conclusion regarding the production of assignments to mortgage notes and deeds of trust, albeit in a slightly different context. In U.S. Bank National Ass'n v. Ibanez, 941 N.E.2d 40 (Mass. 2011), two separate banks foreclosed on the mortgages of two homeowners whose properties the banks then bought at the foreclosure sales. Id. at 44. The banks later filed complaints in the lower court seeking a declaration that they had clear title to the properties. Id. Because the banks failed to show an interest in the mortgages at the time of the foreclosure sales, the sales were invalid, and the lower court entered judgment against the banks. Id. at 45. On appeal, the court determined that, similar to this case, the

continued on next page . . .

Although respondents argue on appeal that their counsel at the mediation "had the requisite authority and/or access to a person with the authority to modify the loan," they do not controvert the mediator's statement that their counsel claimed at the mediation that additional investor approval was needed in order to modify the loan. The record before the district court demonstrates that respondents failed to meet the statutory requirements. Nonetheless, respondents argue that the district court's conclusion that sanctions were unwarranted did not constitute an abuse of discretion because, despite the failures noted above, they mediated to resolve the foreclosure in good faith. We disagree.

---

*. . . continued*

banks were not the original mortgagees and, therefore, they had to show that the mortgages were properly assigned to them in writings signed by the grantors before they could notice the sales and foreclosures of the properties. Id. at 51. In an attempt to prove that they had the authority to foreclose on the properties, the banks provided contracts purporting to assign to them bundles of mortgages; however, the attachments that identified what mortgages were being assigned were not included in the documents provided. Id. at 52. The court concluded that the banks demonstrated no authority to foreclose on the properties because they did not have the assignments. Id. at 53 ("We have long held that a conveyance of real property, such as a mortgage, that does not name the assignee conveys nothing and is void; we do not regard an assignment of land in blank as giving legal title in land to the bearer of the assignment."). The court additionally stated that "[a] plaintiff that cannot make this modest showing cannot justly proclaim that it was unfairly denied a declaration of clear title." Id. at 52. We agree with the rationale that valid assignments are needed when a beneficiary of a deed of trust seeks to foreclose on a property.

SUPREME COURT
OF
NEVADA

(0) 1947A

### Standard of review

At the outset, we establish that we will review a district court's decision regarding the imposition of sanctions for a party's participation in the Foreclosure Mediation Program under an abuse of discretion standard. See Arnold v. Kip, 123 Nev. 410, 414, 168 P.3d 1050, 1052 (2007) (abuse of discretion standard used to review district court's imposition of sanctions on a party for discovery abuses); Banks v. Sunrise Hospital, 120 Nev. 822, 830, 102 P.3d 52, 58 (2004) (reviewing sanctions imposed for spoliation of evidence under an abuse of discretion standard). When determining whether the district court has abused its discretion in such cases, we do not focus on whether the court committed manifest error, but rather we focus on whether the district court made any errors of law.

### Failure to satisfy statutory mandates is a sanctionable offense

As discussed above, under NRS 107.086(5), there are four distinct violations a party to a foreclosure mediation can make: (1) "fail[ure] to attend the mediation," (2) "fail[ure] to participate in the mediation in good faith," (3) failure to "bring to the mediation each document required," and (4) failure to demonstrate "the authority or access to a person with the authority [to modify the loan]." If any one of these violations occurs, the mediator must recommend sanctions. Id. If the homeowner petitions for judicial review, "[t]he court may issue an order imposing such sanctions against the beneficiary of the deed of trust or the representative as the court determines appropriate." Id. We interpret NRS 107.086(5) to mean that the commission of any one of these four statutory violations prohibits the program administrator from

certifying the foreclosure process to proceed and may also be sanctionable. See Tarango v. SIIS, 117 Nev. 444, 451 n.20, 25 P.3d 175, 180 n.20 (2001) (explaining that "may" can be interpreted as "shall" in order to carry out the Legislature's intent, which in the instant case was to make mandatory the requirements set forth in NRS 107.086(5)).

In this case, despite the mediator's opinion that respondents did not participate in the mediation in good faith based on their failure to comply with the FMRs, the district court did not impose sanctions and instead entered a Letter of Certification that allowed respondents to proceed with the foreclosure process on the Pasillases' property. The district court essentially ignored the fact that respondents failed to bring "to the mediation each document required" and did "not have the authority or access to a person with the authority" to modify the loan, failures which we determine constitute sanctionable offenses. Thus, the district court's order directing the program administrator to enter a letter of certification and its failure to consider sanctions was an abuse of discretion because respondents clearly violated NRS 107.086 and the FMRs.[10]   This abuse

---

[10]Respondents argue that this court should decline to address the Pasillases' argument that respondents failed to provide someone at the mediation with the authority to modify the loan because it was not raised in the petition for judicial review. First, we note that our decision here would require the district court to impose sanctions even if respondents' only omission was the failure to provide the required documents. However, we determine that the Pasillases adequately raised this issue in their petition for judicial review by alleging that respondents' counsel at the mediations did not accurately state who they were representing. Therefore, our decision of the issue is appropriate.

requires us to remand the case for the district court to consider appropriate sanctions.

The nature of the sanctions imposed on the beneficiary or its representative is within the discretion of the district court. We have previously listed factors to aid district courts when considering sanctions as punishment for litigation abuses. See Young v. Johnny Ribeiro Building, 106 Nev. 88, 93, 787 P.2d 777, 780 (1990); see also Bahena v. Goodyear Tire & Rubber Co., 126 Nev. ___, ___, 235 P.3d 592, 598-99 (2010); Arnold, 123 Nev. at 415-16, 168 P.3d at 1053. However, we conclude that other factors, more specific to the foreclosure mediation context, apply when a district court is considering sanctions in such a case. When determining the sanctions to be imposed in a case brought pursuant to NRS 107.086 and the FMRs, district courts should consider the following nonexhaustive list of factors: whether the violations were intentional, the amount of prejudice to the nonviolating party, and the violating party's willingness to mitigate any harm by continuing meaningful negotiation.

Because, in this case, the foreclosing party's failure to bring the required documents to the mediation and to have someone present at the mediation with the authority to modify the loan were sanctionable offenses under the Foreclosure Mediation Program, the district court abused its discretion when it denied the Pasillases' petition for judicial review and ordered the program administrator to enter a letter of certification authorizing the foreclosure process to proceed. Therefore, we

reverse the district court's order and remand this matter to the district court with instructions to determine the appropriate sanctions for respondents' violations of the statutory and rule-based requirements.

_____ , J.
Hardesty

We concur:

_____ , C.J.
Douglas

_____ , J.
Cherry

_____ , J.
Saitta

_____ , J.
Gibbons

_____ , J.
Pickering

_____ , J.
Parraguirre

# EXHIBIT 2

128 Nev., Advance Opinion 48

## IN THE SUPREME COURT OF THE STATE OF NEVADA

DAVID EDELSTEIN,
Appellant,
vs.
BANK OF NEW YORK MELLON,
Respondent.

No. 57430

**FILED**

SEP 2 7 2012

TRACIE K LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review under the foreclosure mediation program. Eighth Judicial District Court, Clark County; Donald M. Mosley, Judge.

<u>Affirmed.</u>

Law Office of Jacob Hafter & Associates and Jacob L. Hafter and Michael K. Naethe, Las Vegas,
for Appellant.

Pite Duncan, LLP, and Gregg A. Hubley and Allison R. Schmidt, Las Vegas,
for Respondent.

BEFORE THE COURT EN BANC.

<u>OPINION</u>

By the Court, HARDESTY, J.:

In this appeal, which arises out of Nevada's Foreclosure Mediation Program (FMP), we examine the note-holder and beneficial-interest status of a party seeking to foreclose. We conclude that, to

12 -30478

participate in the FMP and ultimately obtain an FMP certificate[1] to proceed with the nonjudicial foreclosure of an owner-occupied residence, the party seeking to foreclose must demonstrate that it is both the beneficiary of the deed of trust and the current holder of the promissory note.

In determining whether the party seeking to foreclose in this case met those requirements, we also address whether, as is argued here, the designation of Mortgage Electronic Registration System, Inc. (MERS), as the initial beneficiary of the deed of trust irreparably splits the promissory note and the deed of trust so as to preclude foreclosure. We conclude that when MERS is the named beneficiary and a different entity holds the promissory note, the note and the deed of trust are split, making nonjudicial foreclosure by either improper. However, any split is cured when the promissory note and deed of trust are reunified. Because the foreclosing bank in this case became both the holder of the promissory note and the beneficiary of the deed of trust, we conclude that it had standing to proceed through the FMP.

## FACTS AND PROCEDURAL HISTORY

In 2006, appellant David Edelstein executed a promissory note (the note) in favor of lender New American Funding, which provided Edelstein with a loan to buy a house. The note provided that "the Lender may transfer [the] [n]ote," and that "[t]he Lender or anyone who takes [the] [n]ote by transfer and who is entitled to receive payments under this [n]ote is called the 'Note Holder.'"

---

[1]For a valid nonjudicial foreclosure sale to occur under NRS 107.080, a Program certificate must be issued. NRS 107.086; Holt v. Regional Trustee Services Corp., 127 Nev. ___, ___, 266 P.3d 602, 606 (2011).

Edelstein and New American Funding also executed a deed of trust to secure the note, which named New American Funding as the lender, Chicago Title as the trustee, and MERS as the beneficiary. Specifically, the deed of trust described "MERS [as] a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." It also characterized "MERS [as] the beneficiary under this Security Instrument," and later characterized MERS as "[t]he beneficiary of this Security Instrument . . . (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." The deed of trust also stated that "Borrower understands and agrees that MERS holds only legal title to the Interests granted by Borrower in this Security Instrument," but that "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . . ."

Subsequently, both the note and the deed of trust were transferred several times. With regard to the note, New American Funding created an allonge (the allonge),[2] endorsing the note to the order of Countrywide Bank, N.A. Countrywide Bank then endorsed the note to the order of Countrywide Home Loans, Inc., which in turn endorsed the note in blank, as follows: "Pay to the order of _____ Without Recourse."

---

[2]An allonge is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further [e]ndorsements when the original paper is filled with [e]ndorsements." Black's Law Dictionary 1859 (9th ed. 2009). However, an "allonge is valid even if space is available on the instrument." Id.; see also NRS 104.3204(1) ("For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.").

Meanwhile, the deed of trust was also conveyed when MERS granted, assigned, and transferred "all beneficial interest" under the deed of trust to respondent Bank of New York Mellon (BNY Mellon); the conveyance language on the assignment stated that it was assigned and transferred "together with the [N]ote . . . ."[3]   BNY Mellon designated ReconTrust Company as its new trustee, replacing Chicago Title.  At the time of the mediation, ReconTrust physically possessed (1) the note, which was endorsed in blank, and (2) an assignment of the deed of trust, which named BNY Mellon as the beneficiary.

<u>The foreclosure mediation</u>

Edelstein stopped paying on the note and consequently received a notice of default and election to sell; he subsequently elected to participate in the FMP.

Attending the July 2010 foreclosure mediation was Edelstein and his counsel, as well as counsel for BNY Mellon's loan servicer, Bank of America, who appeared as BNY Mellon's agent and representative.  A Bank of America representative with purported authority to negotiate the loan participated by telephone.  Bank of America provided certified copies of the note, endorsed in blank, the deed of trust and its assignment, and the substitution of trustee.  It also provided a short sale proposal and a broker's price opinion.

After the mediation concluded without resolving the foreclosure issue, the mediator filed a report determining that "[t]he parties participated but were unable to agree to a loan modification or

---

[3]The MERS assignment is dated February 19, 2010, but the allonge and both endorsements are undated.  Thus, it is unclear which event occurred first.

make other arrangements." Notably, the mediator did not report that the beneficiary or its representative failed to attend the mediation, failed to participate in good faith, failed to bring the required documents to the mediation, or did not have authority to mediate.

The proceedings before the district court

On August 5, 2010, Edelstein, acting in proper person, filed a petition for judicial review with the district court, seeking a determination that BNY Mellon had participated in the mediation in bad faith and sanctions for statutory violations. He argued that BNY Mellon failed to "provide sufficient documents concerning the assignment of the mortgage note, deed of trust[,] and interest in the trust," and an appraisal or broker's price opinion. He further argued that BNY Mellon failed to "have the authority or access to a person with the authority" to modify the loan as required by NRS 107.086 because the "person representing [BNY Mellon] was not available to fully negotiate in good faith, and did not provide sufficient documentation that [BNY Mellon] held a legal claim to the beneficial proceeds of the [D]eed." Finally, he argued that BNY Mellon "failed to offer any modification offers." Edelstein requested sanctions from the district court based on "bad faith or failure to comply with statutory requirements."

Bank of America (on behalf of BNY Mellon) responded, generally disagreeing with each of Edelstein's arguments and also arguing that Edelstein's petition should not be considered because it was untimely. Edelstein, now represented by counsel, replied. He argued that because the allonge was an invalid "assignment," BNY Mellon was "required legally to show that it own[ed] those rights[,] or it ha[d] no legal authority to be attempting any foreclosure of the Edelstein home." Moreover, he contended that MERS' assignment of the deed of trust was invalid because

MERS was a "sham" beneficiary.  Edelstein also argued that his petition for judicial review was timely filed.

The parties reiterated their arguments in multiple hearings before the district court.  Edelstein emphasized that "[BNY] Mellon ha[d] no standing in [the] matter" because "[t]here was no chain of title that [came] from New American [Funding] to the acting party, . . . [BNY] Mellon."  The district court subsequently issued two separate orders.  In the first order, the district court found that Edelstein timely filed his petition for judicial review and that BNY Mellon had properly appeared at the mediation.  In its second order, the court found that BNY Mellon did not participate in bad faith, that the parties agreed to negotiate further, and that "absent a timely appeal, a Letter of Certification will issue."  Edelstein now appeals.

## DISCUSSION

The primary issue on appeal is whether BNY Mellon may properly participate in the FMP and obtain an FMP certificate to proceed with foreclosure proceedings against Edelstein.[4]  To resolve this issue, we first address the party-status requirements to pursue nonjudicial

---

[4]BNY Mellon also argues that Edelstein's petition was untimely filed and should not have been considered by the district court.  Edelstein actually received the statement by mail on or after July 20, 2010.  Accordingly, his petition for judicial review was timely filed.  FMR 6(2) (2010) (amended and renumbered as FMR 21(2) (effective March 1, 2011)).

The parties also dispute the appropriate standard of review and whether the Program requirements must be strictly or substantially complied with, but the opening and answering briefs on appeal were filed before this court's decisions in Leyva v. National Default Servicing Corp., 127 Nev. ___, 255 P.3d 1275 (2011), and Pasillas v. HSBC Bank USA, 127 Nev. ___, 255 P.3d 1281 (2011), which resolve both issues.

foreclosure in Nevada and next address whether BNY Mellon met those requirements in the context of NRS 107.086.

<u>Requirements to pursue nonjudicial foreclosure in Nevada</u>

Edelstein argues that "[t]he first step [within the FMP] requires the beneficiary of a deed of trust to prove to the homeowner that the beneficiary has a right to foreclose on the property." With some explanation, we agree.

<u>Background of nonjudicial foreclosures in Nevada</u>

In Nevada, promissory notes on real estate loans are typically secured by deeds of trust on the property. "The note represents the right to the repayment of the debt, while the [deed of trust] . . . represents the security interest in the property that is being used to secure the note." Robert E. Dordan, <u>Mortgage Electronic Registration Systems (MERS), Its Recent Legal Battles, and the Chance for a Peaceful Existence</u>, 12 Loy. J. Pub. Int. L. 177, 180 (2010). Thus, the borrower, or grantor, executes both the note and the deed of trust in favor of the lender, who was historically the beneficiary under both, and who names a trustee on the deed of trust "to assure the payment of the debt secured by the trust deed." 54A Am. Jur. 2d <u>Mortgages</u> § 122 (2009); <u>see also</u> NRS 107.028; NRS 107.080. The deed of trust may then be recorded. Former NRS 106.210.[5]

---

[5]Prior to 2011, Nevada law provided that any assignment of the beneficial interest under a deed of trust "may" be recorded. Assembly Bill 284 amended this statute to now require that "any assignment of the beneficial interest under a deed of trust <u>must</u> be recorded." NRS 106.210 (emphasis added); 2011 Nev. Stat., ch. 81, § 1, at 327.

Considered a form of mortgage in Nevada,[6] the deed of trust does not convey title so as to allow the beneficiary to obtain the property without foreclosure and sale, but is considered merely a lien on the property as security for the debt, subject to the laws on foreclosure and sale. Hamm v. Arrowcreek Homeowners' Ass'n, 124 Nev. 290, 298-99, 183 P.3d 895, 901-02 (2008); Orr v. Ulyatt, 23 Nev. 134, 140, 43 P. 916, 917-18 (1896). To enforce the obligation by nonjudicial foreclosure and sale, "[t]he deed and note must be held together because the holder of the note is only entitled to repayment, and does not have the right under the deed to use the property as a means of satisfying repayment." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1039 (9th Cir. 2011). "Conversely, the holder of the deed alone does not have a right to repayment and, thus, does not have an interest in foreclosing on the property to satisfy repayment." Id.; see also Leyva v. National Default Servicing Corp., 127 Nev. ___, ___, 255 P.3d 1275, 1279-80 (2011) (recognizing that the note and the deed of trust must be held by the same person to foreclose under NRS Chapter 107).

When the grantor defaults on the note, the deed-of-trust beneficiary can select the judicial process for foreclosure pursuant to NRS 40.430 or the "nonjudicial" foreclosure-by-trustee's sale procedure under NRS Chapter 107. Nevada Land & Mtge. v. Hidden Wells, 83 Nev. 501, 504, 435 P.2d 198, 200 (1967). At issue here, in a nonjudicial foreclosure, the trustee may sell the property to satisfy the obligation only after

---

[6]NRS 0.037 states, "Except as used in chapter 106 of NRS and unless the context otherwise requires, 'mortgage' includes a deed of trust." For purposes of this opinion, the two terms will be used interchangeably.

certain statutory requirements are met. NRS 107.080. First, the trustee must give notice by recording a notice of default and election to sell and serving the grantor with a copy of that notice. NRS 107.080(2)(c). The grantor then has a certain number of days in which to make good the deficiency. NRS 107.080(2)(a) and (b). After at least three months have passed from the recording of the notice of default, the trustee must give notice of the sale. NRS 107.080(4). Once the sale is completed, title vests in the purchaser; upon court action, however, a sale may be voided if carried out without substantially complying with the statutory requirements. NRS 107.080(5). See Rose v. First Federal Savings & Loan, 105 Nev. 454, 456-57, 777 P.2d 1318, 1319 (1989).

In 2009, amid concerns with the rapidly growing foreclosure rate in this state, the Legislature enacted additional requirements that trustees must meet before proceeding with a nonjudicial foreclosure of owner-occupied housing. A.B. 149, 75th Leg. (Nev. 2009); see Pasillas v. HSBC Bank USA, 127 Nev. ___, ___, 255 P.3d 1281, 1284 (2011). The legislation increased the redemption period for owner-occupied housing, see NRS 107.080(2)(b), and it created the FMP, requiring the trustee to obtain and record an FMP certificate before proceeding with the foreclosure. See NRS 107.086.

Under the FMP, as described in Pasillas, the trustee must serve an election-of-mediation form with the notice of default and election to sell. 127 Nev. ___, 255 P.3d 1284; see also Holt v. Regional Trustee Services Corp., 127 Nev. ___, ___, 266 P.3d 602, 606 (2011). If the grantor/homeowner elects to mediate, the beneficiary of the deed of trust or a representative must, in order for an FMP certificate to issue, "(1) attend the mediation; (2) mediate in good faith; (3) provide the required documents; or (4) if attending through a representative, have a person

present with authority to modify the loan or access to such a person." Pasillas, 127 Nev. at ___, 255 P.3d at 1284 (citing NRS 107.086(5)); see also Holt, 127 Nev. at ___, 266 P.3d at 606.  The documents required under the third item are designed to enable a determination both of whether a person with the required authority over the note is available and of whether the party seeking to foreclose is in fact "[t]he beneficiary of the deed of trust or a representative."  NRS 107.086(4); see Leyva, 127 Nev. at ___, 255 P.3d at 1279 (explaining that "[t]he legislative intent behind requiring a party to produce the assignments of the deed of trust and mortgage note is to ensure that whoever is foreclosing actually owns the note and has authority to modify the loan," and that "[a]bsent a proper assignment of a deed of trust," one "lacks standing to pursue foreclosure proceedings" (internal quotations omitted)).  In other words, the party seeking to obtain an FMP certificate through the FMP must show that it is the proper entity, under the nonjudicial foreclosure statutes, to proceed against the property.  Id.

As explained above, to have standing to foreclose, the current beneficiary of the deed of trust and the current holder of the promissory note must be the same.[7]  Here, the note, the deed of trust, and each

---

[7]Indeed, in placing the onus of complying with the FMP requirements on the "beneficiary of the deed of trust," the Legislature considered the beneficiary of the deed of trust to be the same party as the note holder. For example, the Legislature expressed that it does "not want anyone who has no beneficial interest in the process to be required to attend the mediation. This is for the holder of the note." Hearing on A.B. 149 Before the Joint Commerce and Labor Comm., 75th Leg. (Nev., February 11, 2009) (testimony of Assemblywoman Barbara Buckley). Moreover, the Legislature has characterized the requirement that "the person who is foreclosing actually owns the note" as "an elemental legal step." Id.  The Program rules, at least as they existed at the time of

*continued on next page . . .*

assignment were produced at the mediation.  NRS 107.086(4).  However, as Edelstein argues, "[j]ust providing documents is not enough, as the documents need to demonstrate ... authority, as proven through the authenticated documents, to foreclose on a home."   Edelstein primarily argues that no documents were provided to demonstrate a clear chain of both the deed of trust and the note from New American Funding, the original lender, to BNY Mellon.   Specifically, he asserts that because "MERS was merely a nominee and failed to provide evidence of its authority on behalf of ... New American Funding to assign an interest in the deed of trust, [BNY Mellon] could not legally become beneficiary and noteholder for the purpose of participating in the mediation."   In other words, Edelstein argues, BNY Mellon lacked "authority to foreclose" because the note was "split" from the deed of trust.  To determine whether BNY Mellon had standing to foreclose, we consider whether the use of MERS irreparably "splits" the note and the deed of trust or otherwise impacts BNY Mellon's entitlement to enforce the note and the deed of trust.

The effect of MERS

"MERS is a private electronic database ... that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers."  <u>Cervantes</u>, 656 F.3d at 1038; <u>see also</u> <u>Jackson v. Mortgage</u>

---

*... continued*

Edelstein's mediation, likewise anticipated a single note and deed beneficiary, and they interchangeably used the term beneficiary of the deed of trust and lender.  <u>See, e.g.</u>, former FMR 5(8)(a) (2010) (amended and renumbered as FMR 10(1)(a) (effective March 1, 2011)) (describing requirements for the "Beneficiary (lender)").

Electronic, 770 N.W.2d 487, 490 (Minn. 2009). Before discussing MERS'
impact on this case, we explain how MERS works, as described in various
reported decisions.

MERS was created in response to state recording laws
governing deed of trust assignments. Many lenders sell all or part of their
beneficial interests in home loan notes; they also change servicers.
Cervantes, 656 F.3d at 1038. Indeed, "[i]t has become common for original
lenders to bundle the beneficial interest in individual loans and sell them
to investors as mortgage-backed securities, which may themselves be
traded." Id. at 1039. Correspondingly, the beneficial interest in the
security—the deeds of trust—would also be assigned. In most states,
however, lenders are required to record any changes to the deed of trust
beneficiary and trustee. Id. As the selling of loans increased, "[t]his
recording process became cumbersome to the mortgage industry," id.,
often causing "confusion, delays, and chain-of-title problems." Jackson,
770 N.W. 2d at 490. Thus, "MERS was designed to avoid the need to
record multiple transfers of the deed." Cervantes, 656 F.3d at 1039.

Typically, when a loan is originated, "MERS is designated in
the deed of trust as a nominee for the lender and the lender's 'successors
and assigns,' and as the deed's 'beneficiary' which holds legal title to the
security interest conveyed." Id. MERS' role in subsequent note transfers
depends on whether or not the note is transferred to another MERS
member or a non-MERS member. "If the lender sells or [transfers]
the . . . [note] to another MERS member, the change is recorded only in
the MERS database, not in county records, because MERS continues to [be
the beneficiary of record] on the new lender's behalf." Id.; see also In re
Agard, 444 B.R. 231, 248 (Bankr. E.D.N.Y. 2011) ("So long as the sale of
the note involves a MERS Member, . . . [t]he seller of the note does not and

need not assign the [deed of trust] because under the terms of that security instrument, MERS remains the holder of title to the [deed of trust], that is, the mortgagee, as the nominee for the purchaser of the note, who is then the lender's successor and/or assign." (internal quotations omitted)), <u>vacated in part by</u> <u>Agard v. Select Portfolio Servicing, Inc.</u>, Nos. 11-CV-1826(JS), 11-CV-2366(JS), 2012 WL 1043690 (E.D.N.Y. Mar. 28, 2012). "According to MERS, this system 'saves lenders time and money, and reduces paperwork, by eliminating the need to prepare and record assignments when trading loans.'" <u>Jackson</u>, 770 N.W.2d 490. However, "[a] side effect . . . is that a transfer of an interest in a mortgage [note] between two MERS members is unknown to those outside the MERS system." <u>Id.</u> Conversely, "[i]f the . . . [note] is sold to a non-MERS member, the [assignment] of the deed from MERS to the new lender is recorded in county records and the [note] is no longer tracked in the MERS system." <u>Cervantes</u>, 656 F.3d at 1039.

A representative from MERS testified before a bankruptcy court that its "members often wait until a default or bankruptcy case is filed to have a mortgage or deed of trust assigned to them so that they can take steps necessary to seek stay relief and/or to foreclose." <u>In re Tucker</u>, 441 B.R. 638, 644 (Bankr. W.D. Mo. 2010). In general, "[t]he reason they wait is that, if a note is paid off eventually, as most presumably are, MERS is authorized to release the [deed of trust] without going to the expense of ever recording any assignments." <u>Id.</u>

<u>The use of MERS does not irreparably split the note and the deed of trust</u>

Edelstein contends that MERS "is merely a nominee or agent that cannot act without authorization by its principal," and that the use of MERS irreparably splits the note and the deed of trust, thereby divesting BNY Mellon of ability to foreclose or to modify the loan. He further argues

that "[a]ny actions by MERS with respect to the mortgage note or deed of trust would be ineffective." Because nothing in Nevada law prohibited MERS' actions, we reject Edelstein's argument and examine the two more common approaches taken by other jurisdictions to resolve the issue of whether splitting a promissory note and a deed of trust is irreparable or fatal to a beneficiary's entitlement to enforce the note and the deed of trust.[8]

### The traditional rule

Under the traditional rule, a court need follow only the ownership of the note, not the corresponding deed of trust, to determine who has standing to foreclose. Specifically, "when a note secured by a mortgage is transferred, 'transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter.'" In re Vargas, 396 B.R. 511, 516 (Bankr. C.D. Cal. 2008) (quoting Carpenter v. Longan, 83 U.S. 271, 275 (1872)). "'The [deed] can have no separate existence.'" Id. at 517 (quoting Carpenter, 83 U.S. at 275). Put

---

[8]We recognize that there exist other approaches to this issue. Each state must individually determine whether this system designed to create a national electronic promissory note tracking system comports with state law concerning both promissory notes and title to real property. See Bain v. Metropolitan Mortg. Group, Inc., ___ P.3d___, 2012 WL 3517326 (Wash. 2012) (holding that MERS is not a deed of trust beneficiary for failure to meet Washington's statutory requirement that a beneficiary of a deed of trust must hold the promissory note and rejecting the proposition that phrase nominee creates an agency relationship between MERS and note holders); Niday v. GMAC Mortgage, ___ P.3d ___, 2012 WL 2915520 (Or. Ct. App. 2012) (holding that the secured party note holder is always the beneficiary of the deed of trust and rejecting MERS' standing in nonjudicial foreclosure); U.S. Bank Nat. Ass'n v. Ibanez, 941 N.E.2d 40, 53-54 (Mass. 2011) (discussing MERS' standing in foreclosure proceedings).

another way, "'an assignment of the note carries the [deed] with it, while an assignment of the latter alone is a nullity.' While the note is 'essential,' the [deed] is only 'an incident' to the note." Id. (quoting Carpenter, 83 U.S. at 274). Thus, under the traditional rule, splitting the note and the deed of trust is impossible. The holder of the note always has both.

Pursuant to the traditional rule, MERS' "assignment of the deed of trust separate from the note" would have no force. Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619, 623-24 (Mo. Ct. App. 2009) (explaining that "MERS never held the promissory note, thus its assignment of the deed of trust . . . separate from the note had no force"). Adopting the traditional rule would be inconsistent with our holding in Leyva v. National Default Servicing Corp., however, in which we explained that "[t]ransfers of deeds of trust and mortgage notes are distinctly separate." 127 Nev. ___, ___, 255 P.3d 1275, 1279 (2011). Indeed, to foreclose, one must be able to enforce both the promissory note and the deed of trust. Id.; NRS 107.086(4). Under the traditional rule, entitlement to enforce the promissory note would be sufficient to foreclose; it would be superfluous to then require one to separately prove that a previous beneficiary "properly assigned its interest in land via the deed of trust" by requiring the new beneficiary "to provide a signed writing . . . demonstrating that transfer of interest." Leyva, 127 Nev. at ___, 255 P.3d at 1279. Accordingly, we decline to adopt the traditional rule and instead consider the Restatement approach.

The Restatement approach

Under the Restatement approach, a promissory note and a deed of trust are automatically transferred together unless the parties agree otherwise. Specifically, "[a] transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer

agree otherwise." Restatement (Third) of Prop.: Mortgages § 5.4(a) (1997). Similarly, "[e]xcept as otherwise required by the Uniform Commercial Code, a transfer of a [deed of trust] also transfers the obligation the [deed of trust] secures unless the parties to the transfer agree otherwise." Id. at § 5.4(b). Thus, unlike the traditional rule, a transfer of either the promissory note or the deed of trust generally transfers both documents. The Restatement also diverges from the traditional rule in that it permits the parties to separate a promissory note and a deed of trust, should the parties so agree.

The Restatement notes that "[i]t is conceivable that on rare occasions a mortgagee will wish to disassociate the obligation and the [deed of trust], but that result should follow only upon evidence that the parties to the transfer so agreed. The far more common intent is to keep the two rights combined." Id. at § 5.4 cmt. a. This is because, as we have discussed, both the promissory note and the deed must be held together to foreclose; "[t]he [general] practical effect of [severance] is to make it impossible to foreclose the mortgage." Id. at § 5.4 cmt. c; see also Cervantes, 656 F.3d at 1039.

In this case, New American Funding was the initial holder of the note, whereas MERS was characterized in the deed of trust as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." (Emphasis added.) The deed of trust also stated that "MERS is the beneficiary under this Security Instrument." (Emphasis added.) When interpreting a written agreement between parties, this court "is not at liberty, either to disregard words used by the parties . . . or to insert words which the parties have not made use of. It cannot reject what the parties inserted, unless it is repugnant to some other part of the instrument." Royal Indem. Co. v. Special Serv., 82 Nev.

148, 150, 413 P.2d 500, 502 (1966) (internal quotations omitted). Thus, we examine the effect of designating MERS both as a nominee for New American Funding and its successors and assigns, and as a beneficiary of the deed of trust.   Other courts have held that MERS' designation as nominee "is more than sufficient to create an agency relationship between MERS and the Lender and its successors." In re Tucker, 441 B.R. at 645; In re Martinez, 444 B.R. 192, 205-06 (Bankr. D. Kan. 2011) (concluding that based on the language in the relevant documents giving MERS a role as "nominee" for "[the lender] and its successors and assigns, . . . sufficient undisputed evidence [was presented] to establish that MERS was acting as an agent," and that the choice of the word "'nominee,' rather than 'agent,' does not alter the relationship between the[ ] . . . parties, especially given the fact that the two terms have nearly identical legal definitions"); Cervantes, 656 F.3d at 1044 (explaining MERS' role as an agent).

We agree with the reasoning of these jurisdictions and conclude that, in this case, MERS holds an agency relationship with New American Funding and its successors and assigns with regard to the note. Pursuant to the express language of the deed of trust, "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . . ." Accordingly, MERS, as an agent for New American Funding and its successors and assigns, had authority to transfer the note on behalf of New American Funding and its successors and assigns.   See generally Leyva, 127 Nev. at ___, 255 P.3d at 1279-80 (discussing "[t]he proper method of transferring . . . a mortgage note").

The deed of trust also expressly designated MERS as the beneficiary; a designation we must recognize for two reasons.   First, it is

an express part of the contract that we are not at liberty to disregard, and it is not repugnant to the remainder of the contract. See Royal Indem. Co., 82 Nev. at 150, 413 P.2d at 502. In Beyer v. Bank of America, the United States District Court for the District of Oregon examined a deed of trust which, like the one at issue here, stated that "MERS is the beneficiary under this Security Instrument." 800 F. Supp. 2d 1157, 1160-62 (D. Or. 2011). After examining the language of the trust deed and determining that the deed granted "MERS the right to exercise all rights and interests of the lender," the court held that "MERS [is] a proper beneficiary under the trust deed." Id. at 1161-62. Further, to the extent the homeowners argued that the lenders were the true beneficiaries, "the text of the trust deed contradicts [their] position." Id. at 1161; accord Reeves v. ReconTrust Co., N.A., 846 F. Supp. 2d 1149 (D. Or. 2012). Similarly here, the deed of trust's text, as plainly written, repeatedly designated MERS as the beneficiary, and we thus conclude that MERS is the proper beneficiary. Second, it is prudent to have the recorded beneficiary be the actual beneficiary and not just a shell for the "true" beneficiary. In Nevada, the purpose of recording a beneficial interest under a deed of trust is to provide "constructive notice . . . to all persons."[9] NRS 106.210. To permit an entity that is not really the beneficiary to record itself as the beneficiary would defeat the purpose of the recording statute and encourage a lack of transparency. However, whether designating MERS as the beneficiary on the deed of trust demonstrates an agreement to

---

[9]As noted earlier, Nevada law changed in 2011 to now require that "any assignment of the beneficial interest under a deed of trust must be recorded." NRS 106.210 (emphasis added); 2011 Nev. Stat., ch. 81, § 1, at 327.

separate the promissory note from the deed of trust is an issue of first impression for this court.

Although we conclude that MERS is the proper beneficiary pursuant to the deed of trust, that designation does not make MERS the holder of the note.   Designating MERS as the beneficiary does, as Edelstein suggests, effectively "split" the note and the deed of trust at inception because, as the parties agreed, an entity separate from the original note holder (New American Funding) is listed as the beneficiary (MERS). See generally In re Agard, 444 B.R. 231, 247 (Bankr. E.D.N.Y. 2011).  And a beneficiary is entitled to a distinctly different set of rights than that of a note holder. See Cervantes, 656 F.3d at 1039 (explaining that a "holder of [a] note is only entitled to repayment," whereas a "holder of [a] deed alone does not have a right to repayment," but rather, has the right "to use the property as a means of satisfying repayment." (Emphasis added)); Leyva, 127 Nev. at ___, 255 P.3d at 1279 (explaining that while a deed of trust "is an instrument that 'secure[s] the performance of an obligation or the payment of any debt,'" a mortgage note is a negotiable instrument that entitles the note holder to a payment of debt (alteration in original) (quoting NRS 107.020)).

However, this split at the inception of the loan is not irreparable or fatal.  "Separation of the note and security deed creates a question of what entity would have authority to foreclose, but does not render either instrument void." Morgan v. Ocwen Loan Servicing, LLC, 795 F. Supp. 2d 1370, 1375 (N.D. Ga. 2011).   Rather, "[a]ssuming arguendo, that there was a problem created by the physical separation of the Security Deed from the Note, that problem vanishe[s]" when the same entity acquires both the security deed and the note. In re Corley, 447 B.R. 375, 384-85 (Bankr. S.D. Ga. 2011).  Indeed, while entitlement to enforce

both the deed of trust and the promissory note is required to foreclose, nothing requires those documents to be unified from the point of inception of the loan.  In re Tucker, 441 B.R. 638, 644 (Bankr. W.D. Mo. 2010).  Instead, "[a] promissory note and a security deed are two separate, but interrelated, instruments," Morgan, 795 F. Supp. 2d at 1374, and their transfers are also "distinctly separate," Leyva, 127 Nev. at ___, 255 P.3d at 1279.[10]

Because the Restatement approach is more consistent with reason and public policy and with our recent holding in Leyva, we adopt the approach of the Restatement (Third) of Property and hold that MERS is capable of being a valid beneficiary of a deed of trust, separate from its role as an agent (nominee) for the lender.  We further conclude that such separation is not irreparable or fatal to either the promissory note or the deed of trust, but it does prevent enforcement of the deed of trust through foreclosure unless the two documents are ultimately held by the same party.  Cervantes, 656 F.3d at 1039.  MERS, as a valid beneficiary, may assign its beneficial interest in the deed of trust to the holder of the note, at which time the documents are reunified.  Applying these holdings to the

---

[10]The idea that various rights concerning real property may be severed and freely assigned without destroying such rights is not novel or unique.  Indeed, real property is generally described as a bundle of rights.  See ASAP Storage, Inc. v. City of Sparks, 123 Nev. 639, 173 P.3d 734 (2007).  In other contexts of real property, it is commonly accepted that a right may be severed and later reunified.  For example, the right to travel over a property may be carved out by the creation of an easement, but if that easement is later transferred to the title holder, the easement merges back into the fee.  Breliant v. Preferred Equities Corp., 109 Nev. 842, 846-47, 858 P.2d 1258, 1261 (1993).  This general concept is consistent with our holding here.

facts of this case, we now address whether BNY Mellon was entitled to enforce both the deed of trust and the note.

<u>BNY Mellon is entitled to enforce the deed of trust and the note</u>[11]

In his petition in the district court, Edelstein requested sanctions based on his arguments that BNY Mellon did not have authority to foreclose and that it participated in the mediation in bad faith. The district court also refused to impose sanctions and authorized issuance of the FMP certificate. This court reviews a district court's factual determinations deferentially, <u>Ogawa v. Ogawa</u>, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009) (explaining that a "district court's factual findings . . . are given deference and will be upheld if not clearly erroneous and if supported by substantial evidence"), and its legal determinations de

---

[11]Edelstein argues that there was no "written statement" proving Bank of America's authority to attend the mediation. Neither party provides evidence that BNY Mellon authorized Bank of America to enforce the note. <u>See generally</u> <u>In re Veal</u>, 450 B.R. 897, 920 (B.A.P. 9th Cir. 2011); <u>see also</u> NRS 111.205(1) (requiring an agent negotiating an interest in real property to have written authority). However, BNY Mellon indicated at the hearing before the district court that Bank of America was BNY Mellon's servicer, and a servicer is a representative within the meaning of NRS 107.086(4). Additionally, in responding to Edelstein's petition for judicial review, counsel appearing on behalf of BNY Mellon described her law firm as "[a]ttorneys for Bank of America, duly authorized servicer for The Bank of New York Mellon," and she alleged that she was informed by Bank of America's representative attending the mediation that "he had full authority to negotiate the loan on behalf of [BNY Mellon]." Further, Edelstein informed the district court that he was making his payments to Bank of America, and "[t]he servicer of the loan collects payments from the borrower." <u>Cervantes</u>, 656 F.3d at 1039. We note that while a servicing agreement would have been helpful to discern the extent of Bank of America's authority in this mediation, production of such an agreement is not expressly required by statute or the Program rules.

novo. <u>Clark County v. Sun State Properties</u>, 119 Nev. 329, 334, 72 P.3d 954, 957 (2003). Absent factual or legal error, the choice of sanction in an FMP judicial review proceeding is committed to the sound discretion of the district court. <u>Pasillas v. HSBC Bank USA</u>, 127 Nev. ___, ___, 255 P.3d 1281, 1287 (2011).

To prove that a previous beneficiary properly assigned its beneficial interest in the deed of trust, the new beneficiary can demonstrate the assignment by means of a signed writing. <u>Leyva</u>, 127 Nev. at ___, 255 P.3d at 1279. Here, BNY Mellon claims that it can enforce the deed of trust because MERS assigned its beneficial interest in the deed of trust to BNY Mellon. Certified copies of the deed of trust and the subsequent assignment were produced at the mediation; thus, BNY Mellon is entitled to enforce the deed of trust.[12] With respect to the note, MERS also assigned its beneficial interest in the deed of trust "[t]ogether with the note or notes therein . . ." to BNY Mellon. Because we hold that MERS, as agent (nominee) for New American Funding's successors and assigns, can transfer the note on behalf of the successors and assigns, we conclude that this action also transferred the note to BNY Mellon. <u>See id.</u> at ___, 255 P.3d at 1281 (explaining that, without showing a valid negotiation, a party can establish its right to enforce the note by demonstrating a proper transfer).

_____

[12]On appeal, Edelstein contends that the assignment of the deed of trust is invalid because the notary predates the date of the assignment. In this, and without citation to specific authority, Edelstein claims that the assignment was void. However, Edelstein did not raise this issue in the district court; thus, we need not address it on appeal. <u>See In re AMERCO Derivative Litigation</u>, 127 Nev. ___, ___ n.6, 252 P.3d 681, 697 n.6 (2011) (declining to consider an issue raised for the first time on appeal).

SUPREME COURT
OF
NEVADA

(O) 1947A

Even independently of MERS' assignment, BNY Mellon was entitled to enforce the note. The Uniform Commercial Code, Article 3, governs transfers of negotiable instruments, like the note. Leyva, 127 Nev. at ___, 255 P.3d at 1279. Therefore, for a subsequent lender to establish that it is entitled to enforce a note, it must present "evidence showing [e]ndorsement of the note either in its favor or in favor of [its servicer]." In re Veal, 450 B.R. 897, 921 (B.A.P. 9th Cir. 2011); see also Leyva, 127 Nev. at ___, 255 P.3d at 1279.

When a note is endorsed to another party, Article 3 of the UCC permits a note to "be made payable to bearer or payable to order," depending on the type of endorsement. Leyva, 127 Nev. at ___, 255 P.3d at 1280 (citing NRS 104.3109). Relevant here, "[w]hen endorsed in blank, an instrument becomes payable to bearer . . . ." NRS 104.3205(2). Further, "a note initially made payable 'to order' can become a bearer instrument, if it is endorsed in blank." Bank of New York v. Raftogianis, 13 A.3d 435, 439 (N.J. Super. Ct. Ch. Div. 2010); see also U.C.C. § 3-205 cmt. 2 (2004) (explaining that if "the holder of an instrument, intending to make a special [e]ndorsement, writes the words 'Pay to the order of' without . . . writing the name of the [e]ndorsee," the instrument becomes bearer paper). Here, New American Funding, the original lender, endorsed the note to Countrywide Bank, N.A., who then endorsed the note to Countrywide Home Loans, Inc.[13] Countrywide Home Loans endorsed

---

[13]Edelstein argues in his reply brief that because the document merely says "Patty Arvielo and the term 'V.P.,'" not V.P. of New American Funding, it was an "anomalous endorsement and would not be sufficient to negotiate the note to Countrywide Home Loans, Inc." However, he does not make this argument in his opening brief; thus, we do not consider it. See generally Weaver v. State, Dep't of Motor Vehicles, 121 Nev. 494, 502,

*continued on next page . . .*

the note, in blank, as follows: "Pay to the order of _____ Without Recourse." Thus, the note was bearer paper.

"If the note is payable to bearer, that 'indicates that the person in possession of the promise or order is entitled to payment.'" Leyva, 127 Nev. at ___, 255 P.3d at 1280 (quoting NRS 104.3109(1)(a)); see also NRS 104.3205(2) (explaining that an instrument endorsed in blank is payable to bearer and "may be negotiated by transfer of possession alone"); NRS 104.3201(2) ("If an instrument is payable to bearer, it may be negotiated by transfer of possession alone."). This means that to be entitled to enforce the note, BNY Mellon would merely have to possess the note. Cf. Leyva, 127 Nev. at ___, 255 P.3d at 1280 (discussing the process to be entitled to enforce order paper).

At the time of the mediation, ReconTrust, BNY Mellon's trustee, physically possessed the note. Edelstein argues that because ReconTrust "was in possession, not [BNY Mellon]," ReconTrust was arguably "the holder and person entitled to enforce bearer paper." However, Edelstein did not raise this issue in the district court. See In re AMERCO Derivative Litigation, 127 Nev. ___, ___ n.6, 252 P.3d 681, 697 n.6 (2011) (declining to consider an issue raised for the first time on appeal). Accordingly, we conclude that because ReconTrust as trustee possessed the note, BNY Mellon, the beneficiary, was entitled to enforce it. See generally Monterey S.P. Part. v. W.L. Bangham, 777 P.2d 623, 627 (Cal. 1989) (explaining that "[b]ecause a deed of trust typically secures a

---

. . . *continued*

117 P.3d 193, 198-99 (2005) (stating that this court need not consider issues raised for the first time in an appellant's reply brief).

Supreme Court
of
Nevada

(O) 1947A

debt owed the beneficiary, it is the beneficiary, not the trustee, whose economic interests are threatened when the existence or priority of the deed of trust is challenged," and noting that the beneficiary is the real party in interest); accord In re Veal, 450 B.R. at 917 (holding that Wells Fargo could not establish holder status because "it did not show that it or its agent had actual possession"); cf. NRS 104.9313 and UCC § 9-313, cmt. 3 "Possession" (explaining that principles of agency apply in determining actual possession in the UCC, and that where an agent of a secured party has physical possession of a note, the secured party has taken actual possession).

Because BNY Mellon was entitled to enforce both the note and the deed of trust, which were reunified,[14] we conclude that BNY Mellon demonstrated authority over the note and to foreclose, and thus, there was no abuse of discretion or legal error on the part of the district court.[15]

---

[14]Because it is not at issue in this case, we need not address what occurs when the promissory note and the deed of trust remain split at the time of the foreclosure. See, e.g., U.S. Bank Nat. Ass'n v. Ibanez, 941 N.E.2d 40, 53-54 (Mass. 2011) (discussing what occurs in instances "where a note has been [transferred] but there is no written assignment of the [deed] underlying the note").

[15]Edelstein argues that BNY Mellon failed to act in good faith because it lacked authority and failed to produce adequate documents to establish its authority. Based on our holdings in this opinion, we reject his argument.

SUPREME COURT
OF
NEVADA

(O) 1947A

Accordingly, we affirm the judgment of the district court.

_____, J.
Hardesty

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre